THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ALLEN J. CIOCHON *et al.*, Defendants-Appellees.

(No. 72-243; 

Second District—November 13, 1974.

John J. Bowman, State's Attorney, of Wheaton (Robert Duffey and Charles Kaeding, both Assistant State's Attorneys, and James W. Jerz and Charles D. Sheehy, both of Model District State's Attorneys Office, of counsel), for the People.

Marco & Mannina, of Downers Grove, for appellees.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The State appeals an order allowing defendants' motion to quash a search warrant and suppress all evidence obtained thereunder.

The pertinent part of the affidavit in support of the warrant reads:

"I, John Chaplin, a police officer for the village of Carol Stream, while on patrol on 2/5/72 observed the following activities at the above described address: 1) observed lights on in the above apartment located at the above address and Nicholas Maggiore come out of the apartment on the balcony and observe my marked squad at about midnight 2) observed lights go out in the above apartment and Nicholas Maggiore and another white male observe my marked squad at about 2:30 AM 3) took up surveillance with binoculars and observed the lights on and Nicholas Maggiore and Donna Maggiore and a white male sitting at a table. The white male appeared to prepare a solution and slowly handed a long thin object (approx. 4") to Nicholas Maggiore who had a band on his arm and his sleeve rolled up. His back was then turned to me: Nicholas Maggiore then handed the band to Donna and the long thin object to the white male. He again appeared to prepare a solution and handed the long thin object to Nicholas. Donna then went by Nicholas but I could not observe her as she was blocked by Nicholas. At about 9:00 AM I talked to Katherine Lucas who is a manager of the apartment complex at 545 Gundersen and she advised apartment 407 is occupied by Nicholas and Donna Maggiore. My description of the subjects fit that of Nicholas Maggiore and Donna Maggiore known to Katherine Lucas. I received from her a copy of the application for lease prepared by Maggiores for apartment # 407.

s/ John Chaplin, Complainant

I, John Ambrogio, a police officer with the Village of Carol Stream, was given an application for lease by Officer Chaplin signed by Donna Maggiore. Listed as nearest relative was Phyliss Homolik. On 2/5/72 I called the number listed on the application for Phyliss Homolik and talked to a person who identified herself as Mrs. Homolik. She said no immediate relatives of hers were diabetics.

s/ John Ambrogio, Complainant
Subscribed and sworn to before me on February 5, 1972.
s/ J. E. Fitzgerald, Judge"

Based upon the affidavit, a search warrant issued authorizing the seizure of articles used in the commission of the offenses of unlawful possession of a controlled substance (Ill. Rev. Stat. 1971, ch. 56½, § 1401) and unlawful possession of a hypodermic syringe or needle (Ill. Rev. Stat. 1971, ch. 38, § 22-50).

At the hearing to quash the warrant, defendants' attempted to call one

of the affiants, Chaplin, as a witness, to establish that defendants' constitutional rights had been violated because Chaplin employed an illegal method to obtain the information within his affidavit. In barring such evidence, the court held that under *People v. Bak,* 45 Ill.2d 140 (1970), defendants' proof must be confined to the sufficiency of the statements set forth in the affidavit and that they were thus precluded from introducing any extrinsic evidence. The court did, however, quash the warrant on the basis that Chaplin's use of binoculars to observe the defendants in their apartment violated their right to privacy and therefore constituted an unreasonable search.

The sole question presented is whether it is constitutionally permissible for the police, with the aid of binoculars, to peer into an apartment and thereafter use the conduct observed as basis for probable cause for the issuance of a search warrant.

The court's order was founded on the premise that the use of binoculars, by itself, amounted to an invasion of privacy thereby making the search unreasonable. The State takes the position that anything observed by the use of binoculars falls within the "plain view" doctrine and that observations under that doctrine do not constitute a search. Both approaches are over-simplifications of the question and neither is completely accurate.

■■ The use of binoculars does not, per se, constitute an unreasonable search and the court erred in so holding. (See *United States v. Lee,* 274 U.S. 559, 71 L.Ed. 1202, 47 S.Ct. 746 (1927); *United States v. McCall,* 243 F.2d 858 (10th Cir. 1957); *Fullbright v. United States,* 392 F.2d 432 (10th Cir. 1968); *Johnson v. State,* 2 Md. App. 300, 234 A.2d 464 (1967); *Commonwealth v. Hernley,* 216 Pa. Super. 177, 263 A.2d 904 (1970).) We take special note that in each case except *Johnson v. State, supra,*[1] the authorities had prior information that a crime had occurred or was occurring before surveillance was initiated with binoculars or other aids; additionally, the activities of the suspects were in plain view. Such information is lacking in the case at bar. Whether, prior to the use of binoculars, authorities had reason to believe that a crime had taken place or was taking place is of vital importance. In *Berger v. New York,* 388 U.S. 41, 18 L.Ed.2d 1040, 87 S.Ct. 1873 (1967), a New York statute allowed state courts to issue warrants permitting eavesdropping when the affidavit related "that there is reasonable grounds to believe that evidence of a crime may be thus obtained." The statute did not require the

[1] In this case the court relied upon *Goldman v. United States,* 316 U.S. 129, 86 L.Ed. 1322, 62 S.Ct. 993 (1942). In the subsequent case of *Katz v. United States,* 19 L.Ed.2d 576, at page 583, the Court held that the underpinnings of the trespass doctrine relied upon in *Goldman* were so eroded that it was no longer controlling.

affiant to aver that a crime had been or was in the process of being committed nor was it necessary that the warrant specify that place to be searched or the persons or things to be seized, as required under the fourth amendment. Because of the lack of these essentials, the court likened the statute to the general warrant of colonial days and declared it invalid.

■■■ In *Katz v. United States*, 389 U.S. 347, 351-61, 19 L.Ed.2d 576, 582-88, 88 S.Ct. 507 (1967), the defendant's portion of a telephone conversation was overheard by the use of an electronic device attached to the outside of a public telephone booth. In holding this to be an unreasonable search, the court stated, "The Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (389 U.S. 347, 351, 19 L.Ed.2d 576, 582.) Justice Harlan, in a special concurring opinion, interpreted the court's decision to hold "only (a) that an enclosed telephone booth is an area where, like a home * * * and unlike a field * * * a person has a constitutionally protected reasonable expectation of privacy; (b) that electronic as well as physical intrusion into a place that is in this sense private may constitute a violation of the Fourth Amendment; and (c) that the invasion of a constitutionally protected area by federal authorities is, as the Court has long held, presumptively unreasonable in the absence of a search warrant." (389 U.S. 347, 360-61, 19 L.Ed.2d 576, 587.) He then wrote that to obtain benefits of fourth amendment protection. "there is a two-fold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable'. Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited." (389 U.S. 347, 361, 19 L.Ed.2d 576, 588.) We can find no distinction in law between overhearing conversations by means of electronic devices and observing a person's conduct by the use of binoculars. Permissibility of their use depends upon the surrounding circumstances.

We do not subscribe to the proposition that anything observed with the use of binoculars can automatically be categorized as "within the plain-view doctrine." The State incorrectly relies on a post-*Katz* decision, *Harris v. United States*, 390 U.S. 234, 236, 19 L.Ed.2d 1067, 1069, 88 S.Ct. 992 (1968), and cases cited therein, where the Court stated, "It

has long been settled that objects falling in plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." In those cases only the natural senses were used; no extrinsic aids were necessary.

While *Katz* found the "trespass" doctrine to be so eroded that it could no longer be controlling, it did not bar electronic devices (*cf. United States v. White,* 401 U.S. 745, 28 L.Ed.2d 453, 457-59, 91 S.Ct. 1122 (1971) and cases cited therein) but only restricted their use. See *People v. Wright,* 41 Ill.2d 170, 175 (1968) where the court stated, *"Katz* is applicable only to those instances where electronic eavesdropping devices or other artificial means are employed in addition to the natural senses." As revealed by a reading of *Berger* and *Katz,* the Court, cognizant of the advancements in technology and the effect of those developments upon individual privacy, has turned to the reasonable expectation theory whenever the use of extrinsic aids to the natural senses has tended toward invasion of the right of privacy under the fourth amendment. For a review of search cases where binoculars were used, see Annot., 48 A.L.R.3d 1178 (1973).

The difficulty in review of the instant case is not so much a question of the applicable law as it is the lack of facts presented. Both the State and defendants have within their briefs made statements of "fact" which are unsupported by the record, *e.g.,* defendants state that their apartment is located on the fourth floor and that Chaplin was a trespasser at the time of the surveillance; the State claims that Chaplin made no physical trespass on defendants' property and that at the time of the surveillance the evidence obtained was in plain view. None of these "facts" are revealed by the evidence.

We feel that the trial court misinterpreted the holding in *People v. Bak, supra* (see *People v. Wilson,* 4 Ill.App.3d 766, 769-70 (1972)), and in so doing, barred the introduction of evidence necessary to answer the question posed. In *Bak* and in *People v. Mitchell,* 45 Ill.2d 148 (1970), *cert. denied,* 400 U.S. 882, 27 L.Ed.2d 120, 91 S.Ct. 117, the defendants attempted to introduce evidence to controvert matters contained in the affidavits. Their purpose was to prove the informers unreliable and to show that other allegations of the affiants' were false. Here defendants intended neither of these purposes. They admitted the facts averred in the affidavit. What they intended to introduce was evidence to prove that Chaplin's information, the basis of probable cause for issuance of the warrant, was obtained by means of an unreasonable search conducted prior to his seeking the warrant. To bar the taking of evidence on such claim would be to hold that all allegations contained in an affidavit for

a search warrant are conclusive regardless of the means employed in obtaining the information. We have not found any law supporting such result.

■■ For the reasons stated, we find it necessary to reverse the order and remand the cause with directions to take further evidence to determine the circumstances surrounding the use of binoculars in this case.

Reversed and remanded with directions.

SEIDENFELD and RECHENMACHER, JJ., concur.