## STATE OF HAWAII, Plaintiff-Appellee, *v.* JAMES H. STACHLER, Defendant-Appellant

### NO. 6017

OCTOBER 27, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Defendant-appellant James Stachler appeals from a conviction for Promoting a Detrimental Drug in the First Degree under HRS § 712-1247(1)(e) (Special Pamphlet, 1975).

The events leading to defendant's arrest began on July 17, 1974, when police were conducting a general surveillance via helicopter of the Captain Cook, Kona, area looking for criminal activity. In this sparsely populated and relatively remote area of the Island of Hawaii, defendant Stachler leased about four acres of land on which his residence was located. Defendant's property was adjacent to a forest reserve just below a high ridge and was surrounded by abandoned coffee farms, wild guava growth and numerous macadamia nut, mango and avocado trees. His land could not be seen from the nearest public road, nor from neighboring property, and to get to the house one had to pass through a locked gate and travel up an unimproved road. As the police helicopter flew over Mr. Stachler's land, Officer George Pereira, using binoculars, observed a patch of marijuana about 9 x 12 feet containing three rows, each with approximately four plants

estimated to be between 8 and 10 feet tall. This patch was about 15 feet south of the Stachler house. Although there was conflicting testimony, the court below found that the helicopter maintained an elevation of around 300 feet throughout the surveillance.

After landing, Officer Pereira and other police officers proceeded to property adjoining defendant's land. From this neighboring land Officer Pereira was unable to see the marijuana patch he had previously observed and climbed a 15-foot avocado tree in order to gain a better view. While still unable to see the marijuana patch, he did observe other marijuana plants.

Based upon Officer Pereira's information, a search warrant was issued and was executed on July 18th. No one was at the Stachler residence at the time and Officer Pereira placed the search warrant in his boot for safekeeping. A search of the land and house yielded approximately 31 marijuana plants. The plants were scattered throughout the property with no more than five or six together in any one area. The marijuana patch which had been seen from the air contained only two plants and about ten freshly cut stumps. Officer Pereira, finding that the search warrant in his boot had torn into pieces and was illegible, failed to leave a copy of the warrant at the Stachler residence. It also appears that no property receipt was left on the premises.[1]

Defendant Stachler was finally arrested at Hookena Beach in his Chevrolet van. The van was subsequently searched and 41 marijuana plants weighing approximately 52 pounds were discovered.

Appellant moved to suppress all evidence seized on the basis that the initial helicopter observation violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 5, of the Hawaii State Constitution and that the execution of the search warrant had failed to comply with Rule 41(d) of the Hawaii Rules of Criminal

---

[1] There was no testimony as to whether a property inventory was left at the Stachler residence.

Procedure.[2] This motion was denied. After a jury-waived trial, defendant was found guilty. At the sentencing hearing, defense counsel moved to set aside and defer adjudication of guilt. The circuit court also denied this motion.

The issues presented by this appeal are the validity of the aerial observation, the improper execution of the search warrant and the denial of defendant's motion to defer adjudication of guilt.

## I. *CONSTITUTIONALITY OF THE AERIAL OBSERVATION*

The Fourth Amendment to the United States Constitution guarantees the right of the people to be secure in their persons, houses, papers and effects from unreasonable searches and seizures. Article I, Section 5, of the Hawaii State Constitution similarly protects against unreasonable searches and seizures and additionally guarantees Hawaii's citizens the right of privacy.

Appellant's major contention is that the aerial observation by police was an unreasonable search under the Fourth Amendment and an impermissible governmental invasion of privacy under Article I, Section 5, of the Hawaii State Constitution. Thus, defendant reasons, the search warrant issued as a result of the aerial surveillance was illegal and all evidence seized from defendant and his premises should have been suppressed. *Mapp v. Ohio,* 367 U.S. 643 (1961). The court below found that the helicopter surveillance was a "search" but came within the "plain view" exception to the Fourth Amendment and denied the motion to suppress. Although we find that the circuit court's decision was correct, our affirmance rests on different reasoning. This, of course, does not disturb the conclusion reached by the court below. *Waianae Model Neighborhood Area Association v. City and County of Honolulu,* 55 Haw. 40, 514 P.2d 861 (1973); *Federal Electric Corp. v. Fasi,* 56 Haw. 57, 527 P.2d 1284 (1974).

The initial question to be decided is whether the helicopter observation by Officer Pereira constituted a "search"

---

[2] Now Hawaii Rules of Penal Procedure, Rule 41(d).

subject to Fourth Amendment protections. *United States v. Katz*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), is the leading case on the scope of the Fourth Amendment. There, the Supreme Court held that the governmental bugging of a caller in a public phone booth was a search to which the warrant requirements of the Fouth Amendment applied. In *Katz*, the court rejected the idea that some areas are automatically accorded constitutional protection while others are not, saying

> But this effort to decide whether or not a given "area," viewed in the abstract, is "constitutionally protected" deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

389 U.S. at 351. The opinion has generally been understood to hold that official intrusions into matters or activities as to which an individual has exhibited a "reasonable expectation of privacy" are searches within the meaning of the Fourth Amendment. A reasonable expectation of privacy is something more than just a subjective expectation of privacy, it must also be an expectation that "society is prepared to recognize as reasonable." Harlan, J., concurring, *United States v. Katz*, 389 U.S. at 361.

Even before *Katz*, however, the courts had recognized that certain governmental observations, interceptions and seizures were beyond the scope of the Fourth Amendment. One such exception has been where an object or activity is open and visible to members of the public. In this situation, it is obvious that no reasonable expectation of privacy can be asserted since the object or activity is in open view for any person to observe.

Thus, in *Hester v. United States*, 265 U.S. 57, 44 S. Ct. 445, 68 L. Ed. 898 (1924), federal revenue agents on private land without a warrant who observed defendant drop a jug of moonshine whiskey were allowed to testify as to their ob-

servations. The Supreme Court, in finding the testimony admissible, stated

The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon (defendant's) father's land. As to that, it is enough to say that . . . the special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers, and effects" is not extended to the open fields.

265 U.S. at 59. *Accord, Air Pollution Variance Board of Colorado v. Western Alfalfa Corp.*, 416 U.S. 861, 865, 94 S. Ct. 2114, 40 L. Ed. 2d 607 (1974) (approving *Hester v. United States, supra); United States v. Santana*, 427 U.S. 38, 42, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976) (also approving *Hester v. United States, supra)*. Similarly, in *United States v. Lee*, 274 U.S. 559, 47 S. Ct. 746, 71 L. Ed. 1202 (1927), when a Coast Guard patrol boat on the high seas approached a rum runner's launch to examine it with a search light, the Supreme Court could say that "no search on the high seas [was] shown." 274 U.S. at 563.

While this "open view" exception has sometimes been categorized under the "plain view" exception, it should be distinguished from those instances in which the "view" takes place *after* an intrusion into activities or areas as to which there is a reasonable expectation of privacy. In the latter instance, if the original intrusion is justified, such as by consent, hot pursuit, warrant or as incident to an arrest, objects sighted in plain view will be admissible so long as the view was inadvertent. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), discussion beginning at 465. However, in the "open view" situation no search is involved and the requirement that the view be inadvertent is not applicable.

Although this court has never decided a case on the basis of the open view doctrine, in *State v. Hanawahine*, 50 Haw. 461, 443 P.2d 149 (1968), we recognized that "[a] search implies a prying into hidden places for that which is concealed and it is not a search to observe that which is open to view . . . What is in open view, if no dominion is exercised

over it, is not a search." [Citations omitted.] 50 Haw. at 465.

Turning now to the facts in the instant case, we must determine whether defendant Stachler had a reasonable expectation of privacy as to his marijuana patch.

The lower court found, and we do not disturb that finding, that applying state law and Civil Aeronautics Board[3] regulations, the police helicopter was flying at a lawful and reasonable height, and that therefore Officer Pereira had a right to be where he was at the time of the aerial observation.[4] We do not believe that the height of the helicopter is determinative in every instance, but should be only one factor in considering the "reasonableness" of an expectation of privacy. We believe that, consistent with *Katz,* in some cases reasonable expectations of privacy may ascend into the airspace and claim Fourth Amendment protection. *Dean v. Superior Court for County of Nevada,* 35 Cal. App. 3d 112, 110 Cal. Rptr. 585 (1973). This is not such a case. If the lower court had found that the height of a helicopter was unreasonably low or violated applicable laws and regulations, or that there had been continued aerial harrassment or prolonged aerial surveillance of the Stachler property stretching out over hours or days, or

---

[3] Although the lower court referred to Civil Aeronautics Board regulations, the applicable regulations were promulgated by the Federal Aviation Administration.

[4] HRS § 263-2 provides that sovereignty in the space over the lands and waters of the State rests in the State, except where granted to and assumed by the United States. HRS § 263-3 states that the ownership of a space above the lands and waters of the State is vested in the several owners of the surface beneath subject to a right of flight described in § 263-4. HRS § 263-4 provides that flight in aircraft over the lands and waters of the State is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water is put by the owner; or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath.

The regulations of the Federal Aviation Administration, 14 C.F.R. § 91.79(c) state that over other than congested areas, aircraft shall maintain an altitude of 500 feet above the surface, except over water and sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person or structure. § 91.79(d) provides, however, that helicopters may be operated at less than the minimum of 500 feet if the operation is conducted without hazard to persons or property on the surface.

The lower court found that the area of the aerial surveillance was sparsely populated and that the flight of the helicopter was conducted without hazard to persons or property on the surface below, and did not interfere with existing use.

that highly sophisticated viewing devices had been employed, we might well decide differently.[5]

Similarly, if it had been shown that helicopter flights were rare occurrences in the area, the objective reasonableness of defendant's expectation of privacy would be more credible. However, the lower court found that although this was a sparsely populated area there were occasional helicopter flights over the area by the National Guard and "crop dusters" and there was testimony that light aircraft, including tour, pleasure and business craft, flew over the area each day.

Finally we think that defendant Stachler could have no reasonable expectation of privacy as to observation, from a reasonable height, of his open marijuana patch. We look to the decision in *Dean v. Superior Court for County of Nevada, supra,* for guidance in this relatively new area of search and seizure law. In *Dean,* defendant claimed a reasonable expectation of privacy from airplane surveillance in a marijuana field about half the size of a football field located in the Sierra foothills. The court, in holding that the aerial overflights which revealed the open marijuana fields did not violate the Fourth Amendment, said

> One who establishes a three-quarter-acre tract of cultivation surrounded by forests exhibits no reasonable expectation of immunity from overflight. The contraband character of his crop doubtless arouses an internal, uncommunicated need for secrecy; the need is not exhibited, entirely subjective, highly personalized, and not consistent with the common habits of mankind in the use of agricultural and woodland areas. Aside from an uncommunicated need to hide his clandestine activity, the occupant exhibits no reasonable expectation of privacy consistent with the common habits of persons engaged in agriculture.

---

[5] *See* People v. Sneed, 32 Cal. App. 3d 535, 108 Cal. Rptr. 146 (1973), where the court held that there was a reasonable expectation of privacy to be free from police observation by helicopter from the air at 20 to 25 feet.

35 Cal. App. 3d at 117-118. In the instant case, defendant Stachler's expectation of privacy was also not exhibited and entirely subjective, and it was certainly inconsistent with the "common habits of persons engaged in agriculture." It is true that the marijuana patch in this case was only 9 x 12 feet while in the *Dean* case the marijuana covered three-quarters of an acre. Yet that difference does not fundamentally change the principle that, consistent with the common habits of an agriculturist, one growing a crop in an open field would not expect privacy from overflight. If defendant had been engaged in growing taro, sweet potato or banana, surely he would not have a reasonable expectation of privacy as to his crop from aerial observation. And, society as a whole would not find such an expectation of privacy objectively reasonable according to the common habits of mankind.

Since we find that defendant did not have a reasonable expectation of privacy from aerial observation, conducted at a reasonable height, as to his open marijuana patch, it follows that the helicopter surveillance in this case was not a search in the constitutional sense and Officer Pereira's observation falls within the parameters of the open view doctrine discussed above.

Defendant's additional argument that the helicopter observation was an "invasion of privacy" prohibited by Article I, § 5, of the Hawaii State Constitution is without merit. In *State v. Roy*, 54 Haw 513, 510 P.2d 1066 (1973), we discussed the phrase "invasion of privacy" and noted that it had been added to Article I, § 5, in 1968. We said

A careful review of Report No. 55 of the 1968 Constitutional Convention, in which the amendment was proposed, and of the debates in the Committee of the Whole regarding that amendment, has led us to conclude that the delegates to the Constitutional Convention added to article I, § 5 the words "invasions of privacy" out of a concern to protect against extensive governmental use of electronic surveillance techniques. . . .

54 Haw. at 517. Additionally, Report No. 55 of the 1968 Constitutional Convention shows that the amendment was also intended to guard against undue government inquiry into

and regulation of those areas of a person's life which are necessary to insure "man's individuality and human dignity." Proceedings of the 1968 Constitutional Convention, p. 234.

Our holding above that defendant had no reasonable expectation of privacy as to his open marijuana patch viewed from a helicopter operated at a legal and reasonable height, disposes of defendant's contention that the observation was an undue government inquiry into his life. The marijuana patch was open to the view of any member of the public who happened to be flying over defendant's property. There was no search or "inquiry" in the instant case and there has been no showing that sophisticated electronic surveillance techniques were employed.[6] As we indicated above, if there had been such a showing, this case would come to us in an entirely different posture.

## II. *EXECUTION OF THE SEARCH WARRANT*

Defendant contends that Officer Pereira's failure to leave a copy of the search warrant and a property receipt at defendant's residence violated his due process rights and thus any evidence seized should have been suppressed.[7] Rule 41(d) of the Hawaii Rules of Criminal Procedure states in pertinent part:

> The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the

---

[6] This court does not consider the use of binoculars to fall within the activity prohibited by Article I, §5. Binoculars were commonly used in police work in 1968 and there is no indication that the framers of the amendment considered such use to be an invasion of privacy.

[7] Appellant's argument in his brief before this court, as well as the State's answer, was framed in terms of due process of law as "guaranteed by the *First* and Fourteenth Amendments." Assuming that appellant meant to make a *Fifth* Amendment argument, no authority is cited which would support the contention that the due process clause is applicable to Rule 41(d) violations and that the suppression remedy is available to such a deprivation. However, even assuming that such would be the case, our decision would not change.

> property taken or shall leave the copy and receipt at the place from which the property was taken.

No one was present at the defendant's home when the search was made and the trial court found, in denying the motion to suppress, that defendant's rights had not been prejudiced by Officer Pereira's failure.[8]

Although this is an issue of first impresion before this court, several federal appellate courts have considered violations of Rule 41(d) of the Federal Rules of Criminal Procedure, after which Hawaii Rule 41(d) was patterned. These courts have held that the procedural requirements of Rule 41(d), although important, are essentially ministerial in nature. Thus, in *United States v. McKenzie*, 446 F.2d 949 (6th Cir. 1971), where defendant claimed that a search of his premises was defective because he was not served with a copy of the warrant until the day after the search, it was held that absent a showing of prejudice, irregularities in execution of a search warrant do not void an otherwise valid search. Similarly, in *United States v. Hall*, 505 F.2d 961 (3rd Cir. 1974), the return on a search warrant was not sent to the issuing magistrate nor signed by an agent as required by Rule 41(d). There, the court noted that Rule 41(d) does not prescribe remedies which flow from a failure to adhere to its procedures, and said

> [W]e do not believe that it was intended that every violation of the procedures in the rule, however insignificant and however lacking in consequences, should give rise to the remedy of suppression.

505 F.2d at 964. The court concluded that a motion to suppress because of violations of Rule 41(d) should be granted only in instances where the defendant demonstrates prejudice from the violation. *See United States v. Burke*, 517 F.2d 377 (2nd Cir. 1975). We agree, and hold that where, as here, there has been no showing that a violation of Rule 41(d) procedures has resulted in prejudice to the defendant's

---

[8] Under practice of courts in the Third Circuit, defendant could have received a copy of the warrant at any time upon application.

rights, a suppression remedy is not appropriate. *See* also *State v. Kalai,* 56 Haw. 366, 537 P.2d 8 (1975).

This, of course, should in no way be interpreted as a license to law enforcement officers to disregard the procedures of Rule 41(d). We will not hesitate to call into play the suppression remedy where a sufficient showing of prejudice is made.

### III. *DENIAL OF MOTION TO DEFER ADJUDICATION OF GUILT*

Defendant's final claim is that the deferred acceptance of guilty plea (DAG plea) procedures should have been available to him. He argues that the lower court's denial of his motion to set aside and defer adjudication of guilt, made after trial and after a finding of guilt, was a denial of due process and equal protection.[9]

In *State v. Martin,* 56 Haw. 292, 535 P.2d 127 (1975), we held that the refusal to entertain a seasonable and proper motion for a DAG plea is judicially improper and denies a defendant due process of law. However, the DAG plea procedure to which we referred in *Martin* relates only to the disposition of a defendant after a plea of guilty. A motion for deferred acceptance of guilty plea is not seasonably made after a plea of not guilty and a trial resulting in a finding of guilt.[10] It is true that the conditional discharge procedures provided by HRS § 712-1255 (Special Pamphlet, 1975) are available to any person who pleads guilty to or is found guilty of certain drug-related offenses, and are not foreclosed by a not guilty plea followed by a trial and a finding of guilt. But the offense of which defendant Stachler was found guilty, HRS § 712-1247(1)(e) (Promoting a Detrimental Drug in the First Degree), is not listed among those offenses which give rise to

---

[9] As in the previous argument, appellant's brief claimed denial of due process under the *First* Amendment. We assume that this is a *Fifth* Amendment claim.

[10] Act 154, setting forth deferred acceptance of guilty plea procedures, was passed in 1976, after this case was heard below. Therefore, we intimate no opinion as to whether that Act would allow a DAG plea after a trial and finding of guilt.

conditional discharge procedures under HRS § 712-1255. Thus, it is clear to this court that the legislature has expressed a policy of withholding conditional release in some drug-related offenses, such as the one with which defendant was charged.[11]

Although the circuit court denied defendant's motion to defer adjudication of guilt without considering the merits of the motion, since we find that conditional release was not available to defendant, any error was, at most, harmless.

Affirmed.

*Wallace H. Gallup, Jr. (Sterry, Mah & Gallup* of counsel) for Defendant-Appellant.

*Andrew P. Wilson*, Deputy Prosecuting Attorney, for Plaintiff-Appellee.

---

[11] We give no opinion as to whether DAG plea procedures under Act 154 are available to defendants charged with drug-related offenses other than those listed in HRS § 712-1255.