
STATE OF HAWAII, Plaintiff-Appellant, *v.* DAN K. KAAHEENA, et al., Defendants-Appellees

NO. 5926

FEBRUARY 21, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Appellant, State of Hawaii, appeals from the judgment of the District Court of the First Circuit granting appellees' pretrial motion to dismiss and to suppress certain evidence.

24

We affirm.

On May 2, 1975, in the late evening, members of the vice squad of the Honolulu Police Department went to 914-916 Queen Street, Honolulu, to investigate certain violations of the gambling laws. The investigating officer testified that he had received numerous telephone calls alleging that gambling activity was taking place at that location. At approximately 8:30 p.m., he observed the lights to be on and heard sounds resembling the pounding of a dice cup. One of the windows of the building at that address was covered by drawn drapes and closed venetian blinds. But at the top of the window the drapes were sagging and there appeared to be a small hole in the blinds. Consequently, there was about a one-inch aperture in the top of the window through which one could look into the building. However, the hole was high enough off the ground that, by merely standing on the sidewalk, it would have been impossible to look through.

Upon their arrival, one of the officers stacked a crate upon a bench which was against the side of the building. By standing on the crate, he was able to peer through the one-inch hole into the building. The officer saw appellees engaged in the alleged gambling activities. The officers then entered the premises and arrested appellees. The officers had neither permission to enter the building nor a search warrant.

Appellees were charged with engaging in illegal gambling activity in violation of HRS § 712-1223 (Special Pamphlet, 1975).[1] Appellees moved to suppress the evidence observed by the officers. On May 19, 1975 a hearing on the motion was held and the motion was denied. On May 23, 1975, appellees filed a motion for reconsideration. The motion was heard on June 3, 1975. At that time, the District Court of the First Circuit granted appellees' motion to dismiss and to suppress the evidence.

---

[1] HRS § 712-1223 (Special Pamphlet, 1975):

Gambling. (1) A person commits the offense of gambling if he knowingly advances or participates in any gambling activity.

(2) Gambling is a misdemeanor.

The sole issue determinative of this appeal is whetner the officer's observations, made by standing on a crate stacked upon a bench and peering through a one-inch aperture in the window caused by a hole in the closed venetian blinds and a sag in the drawn drapes, constituted an unreasonable search and seizure? We answer the issue in the affirmative and affirm the judgment of the District Court.

In granting appellees' motion to dismiss and to suppress the evidence, the lower court based its decision on the fact that the officers had committed a technical trespass.[2] The vantage point from which they peered into the window was immediately against the building. The boundary, however, extended at least eight feet out from the building. The officers were clearly trespassing on private property. However, if the officers were trespassing on private property, the trespass was so technical in nature that we should avoid making it dispositive of the instant case. While we affirm the judgment of the lower court, we do so on different grounds. *State v. Stachler*, 570 P.2d 1323, 1326 (Haw., 1977), *citing Waianae Model Neighborhood Area Association v. City and County of Honolulu*, 55 Haw. 40, 514 P.2d 861 (1973); *Federal Electric Corp. v. Fasi*, 56 Haw. 57, 527 P.2d 1284 (1974).

The Fourth Amendment of the Constitution of the United States guarantees each citizen a right to privacy against unreasonable governmental intrusions:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place

---

[2] THE COURT: I heard enough in this case. The Court does find, as a matter of fact, that the observation by the police officer, Mr. Takahashi, was conducted immediately up against the structure of the premises wherein the officer observed this action on the part of the defendants, and that it was not eight feet, nor five feet, nor three feet away from the building, but directly on and against the building. From the evidence heard before this Court, the Court does find that the officer committed trespass at that time, and I'll grant the motion to dismiss. June 3, 1975, Tr. 30.

to be searched and the persons or things to be seized.[3]

*Katz v. United States*, 389 U.S. 347 (1967) is currently the leading case on the scope and application of the Fourth Amendment. In *Katz*, the United States Supreme Court held that the electronic bugging of a public telephone booth by governmental agents resulted in a search and seizure within the meaning of the Fourth Amendment. The impact of *Katz* was to expand the scope of protection afforded by the Fourth Amendment by limiting the rigid application of technical property doctrines in the law of search and seizure. Pursuant to *Katz* certain traditional "constitutionally protected areas" may no longer be afforded automatic constitutional protection.[4] Rather, the inquiry is restricted to an analysis of an individual's "reasonable expectation of privacy." *State v. Boynton*, No. 5912 (Haw. January 24, 1978).

> [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States*, 389 U.S. at 351, 352.

The emergence and acceptance of the "reasonable expectation of privacy" test has resulted in the erosion of the traditional "trespass doctrine" of search and seizure law. It was previously held that the presence or absence of penetration or trespass was controlling as to the Fourth Amendment inquiry. Thus, in *Olmstead v. United States*, 277 U.S. 438 (1928), a closely divided United States Supreme Court decided that the wire tapping surveillance of private telephone conversations by governmental agents without any trespass was outside the scope of Fourth Amendment protection. While, pursuant to *Katz*, the technical doctrine of trespass no longer plays the determinative role in the search and seizure

---

[3] We ignore, as unnecessary to the conclusion we reach in this case, the further protection afforded by Article I, Section 5 of the Constitution of the State of Hawaii against unreasonable invasions of privacy.

[4] It appears that prior to *Katz*, a private home was such an area given automatic constitutional protection. Weeks v. United States, 232 U.S. 383 (1914).

scenario, it is, nevertheless, a relevant factor in analyzing the extent of one's reasonable expectation of privacy. Instead of merely looking to whether the observer had trespassed onto private property, the inquiry now also concerns the nature and degree of privacy of the property involved. *People v. Willard*, 238 Cal. App.2d 292, 47 Cal. Rptr. 734 (1st Dist. 1965).

In *Lorenzana v. Superior Court*, 9 Cal. 3d 626, 511 P.2d 33 (1973), it was held that a police officer's warrantless observations through a window of a private home constituted an illegal search and seizure. The officer's vantage point was from the side of the house having no doors or defined pathways. The court reasoned that since the area was not a public common use area and there was no implied permission extended to the public to enter, the defendants had a reasonable expectation of privacy.

On the other hand, in *People v. Willard, supra,* it was held that the police officers' warrantless observations from the steps leading up to a side door of defendant's house and through a screen door were not an illegal search and seizure. There was no reasonable expectation of privacy since the door, while situated well within defendant's private property, was a normal means of access to the house to which the public was impliedly invited.

Consequently, in the instant case, the fact that the officers' vantage point was on private property is not conclusive of the issue of the legality of their actions. The building housed a commercial establishment and some rental apartments. It was situated immediately adjacent to a public sidewalk. The area occupied by the officers was not in the exclusive control of any of the occupants of the building and was open to the public as a common use area.

Pursuant to *Katz,* since the doctrine of trespass alone may not be controlling, other factors may be looked to in determining the extent and possible violation of one's reasonable expectation of privacy. The test used in determining one's reasonable expectation of privacy is twofold. First, one must exhibit an actual, subjective expectation of privacy. Second, that expectation of privacy must be one that society would

recognize as objectively reasonable. *State v. Stachler, supra* at 1326, *citing Katz v. United States,* 389 U.S. at 361 (Harlan, J., concurring).

The Fourth Amendment of the United States Constitution only affords protection against unreasonable governmental searches and seizures. But before the issue of the "reasonableness" of the activity is confronted, it must first be determined whether the activity did, in fact, constitute a search and seizure within the scope of the Fourth Amendment. The *Katz* reasonable expectation of privacy doctrine is relevant in making this determination. If an object or an activity is open and visible to members of the public, no reasonable expectation of privacy can be asserted and a governmental observation of that activity will not constitute a search and seizure in a constitutional sense. *State v. Stachler, supra* at 1326, 1327.

> "A search implies a prying into hidden places for that which is concealed and it is not a search to observe that which is open to view." *People v. Exum,* 382 Ill. 204, 210, 47 N.E.2d 56, [59] (1943). What is in open view, if no dominion is exercised over it, is not a search.

*State v. Hanawahine,* 50 Haw. 461, 465, 443 P.2d 149, 152 (1968).

The "open view" doctrine is distinguishable from the visually similar, but legally distinct, "plain view" doctrine. *Scales v. State,* 13 Md. App. 474, 478 n. 1, 284 A.2d 45, 47 n. 1 (1971). In the "plain view" situation "the view takes place *after* an intrusion into activities or areas as to which there is a reasonable expectation of privacy." *State v. Stachler, supra* at 1327 (emphasis in original). The officer has already intruded, and, if his intrusion is justified, the objects in plain view, sighted inadvertently, will be admissible. *State v. Stachler, supra, citing Coolidge v. New Hampshire,* 403 U.S. 443 (1971); *Harris v. United States,* 390 U.S. 234 (1968).[5]

In the "open view" situation, however, the observation takes place from a non-intrusive vantage point. The govern-

---

[5] *Harris* initiated the "open view"-"plain view" confusion when the court declared: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure . . . ." 390 U.S.

mental agent is either on the outside looking outside or on the outside looking inside to that which is knowingly exposed to the public. *See* Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle*, 26 Mercer L. Rev. 1047, 1096, 1097 (1975). The object under observation is not subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution.

In the instant case, the appellees did have a reasonable expectation of privacy with respect to their activities within the building. The drawn curtains and closed venetian blinds are indicative of their subjective intent to avoid the public gaze. Further, the fact that no one could possibly see into the building without the aid of something like a bench and a crate for elevation, confirms the objective reasonableness of their expectation of privacy. The mere fact that there was a one-inch aperture in the window, caused by sagging drapes and a hole in the blinds, but high enough off the ground so that no one could look in unassisted, will not serve to destroy that reasonable expectation of privacy.

The activities of the appellees were not in "open view." What the officers saw in the building would not have been visible to the glance of the curious passerby. In fact, one of the officers testified that by merely standing on the sidewalk, it would have been impossible to look into the building.[6] A

---

at 236. Clearly, the statement holds true if the officer has justifiably intruded into the private domain and has sighted an object in "plain view." However, it does not apply in the situation where the officer has observed an object inside the private domain, albeit in open view, but from an exterior vantage point. In this situation, something more, such as consent, a search warrant or exigent circumstances, is needed to allow the officer to enter and seize the object.

[6] THE COURT: Well, I have a few more. How high off the ground was that opening in the venetian blind?
THE WITNESS: Oh, it could be six feet, maybe more off the ground.
THE COURT: Well, Officer, how tall are you?
THE WITNESS: I am 5 feet 9.
THE COURT: 5 feet 9?
THE WITNESS: By standing on the sidewalk, no way I could look into it.
May 19, 1975, Tr. 13: 4-12.

completely different situation with a different result would be presented if the aperture were at the eye level of one merely standing on the sidewalk instead of being high off the ground. In such a case, it would not have been objectively reasonable to entertain an expectation of privacy. Any member of the curious public could, without any assistance, glance into the building. But when the placing of a crate on top of a bench is necessary to give one an elevated vantage point from which to view the alleged illicit activities, the artificial creation of that vantage point will not convert to open view what was reasonably expected to have been private.

In *Jacobs v. Superior Court*, 36 Cal. App.3d 489, 111 Cal. Rptr. 449 (5th Dist. 1973) the defendants were engaged in alleged illegal drug activities in a closed room at night. The windows were covered by drawn curtains and closed venetian blinds. However, a two-inch aperture existed in one of the windows. To look through the hole and into the room the police officer had to climb onto a planter adjacent to the window. It would have been impossible to look into the room without the aid of climbing onto the planter. The court held that the defendants did have a reasonable expectation of privacy and that the officer's observations, made possible by climbing onto the planter, constituted an unreasonable search and seizure.

In *Pate v. Municipal Court*, 11 Cal. App.3d 721, 89 Cal. Rptr. 893 (5th Dist. 1970) the police officers climbed onto a trellis outside of defendant's second floor apartment in order to peer through a small crack in the curtains drawn across the window. The court held that by closing the curtains, defendant exhibited a reasonable expectation of privacy and that the action of the officers was an unreasonable intrusion.

The inquiry must turn, therefore, to the reasonableness of the intrusion in this case. In *Katz*, the intrusion was accomplished by means of an electronic listening device but it is apparent that the conclusion of the Court would not have been different had the telephone conversation been overheard by an unaided ear pressed to the wall of the phone booth. Conceptually, an unaided eye placed to a keyhole or other opening in a wall behind which a reasonable expecta-

tion of privacy is enjoyed would accomplish the same illegitimate intrusion. The line is drawn when it is determined that the existence of the opening does not negate the reasonableness of the expectation of privacy.[7] Thus, where marijuana plants were observable by police officers through cracks in a garage door, by virtue of a light left burning in the garage, it was said:

> The condition of the premises which facilitated the ability of the officers to observe the items in the garage negated any exhibition of the defendant's reasonable expectation of privacy.

*People v. Superior Court,* 33 Cal. App. 3d 475, 481, 109 Cal. Rptr. 106, 109 (2d Dist. 1973).

In the present case, the aperture in the window by which appellees were observed was insufficient to negate their reasonable expectation of privacy due to its size and height above the ground. It follows that observations through the aperture constituted a search, the reasonableness of which it is the State's burden to establish. As in *Katz,* the State attempts to show that prior observation and investigation by the police had established a sufficient probability that gambling activity was taking place to justify the surveillance in which the police engaged. We may assume, arguendo, that as in *Katz,* a court could constitutionally have authorized the search in which the officer engaged when he climbed to the level of the aperture and looked into the interior of the premises. But, as was held in *Katz,* the mere fact that the officer may have possessed probable cause sufficient to support the issuance of a search warrant did not authorize him to engage in a warrantless search. No contention has been advanced that the information which the officer possessed prior to his observation of appellee's activities through the window aperture showed exigent circumstances which might have made it

---

[7] This analysis is supported by cases in which the propriety of observations made by the use of binoculars has turned on the existence of a reasonable expectation of privacy rather than the use of a visual aid. *See, e.g.,* Commonwealth v. Hernley, 216 Pa. Super. 177, 263 A.2d 904 (1970), *cert. den.* 401 U.S. 914; People v. Ciochon, 23 Ill. App. 3d 363, 319 N.E.2d 332 (1974); United States v. Minton, 488 F.2d 37 (4th Cir. 1973).

reasonable for the officer to conduct the search without a warrant. *Vale v. Louisiana*, 399 U.S. 30 (1970). The evidence obtained by the officer's observation through the aperture was properly suppressed.

Affirmed.

*Kendall C. S. Wong*, Deputy Prosecuting Attorney, (*Charles A. Viviano*, Deputy Prosecuting Attorney, on the briefs) for Plaintiff-Appellant.

*Vincent H. Yano* for Defendants-Appellees.