898 P.2d 604

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Stephen R. TANGALIN, Defendant–Appellant.**

**No. 16690.**

Intermediate Court of Appeals of Hawai'i.

May 22, 1995.

Ronald T. Ogomori, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Michael K. Soong, Deputy Pros. Atty., County of Kauai, on the brief, Lihue, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

Defendant–Appellant Stephen Roderick Tangalin (Defendant) was indicted on January 27, 1992 for Possession with the Intent to Use Drug Paraphernalia in violation of Hawai'i Revised Statutes (HRS) § 329–43.5(a) (Supp.1992) (Count I), Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712–1243 (1985) (Count II), and Driv-

ing Under the Influence of Intoxicating Liquor (DUI) in violation of HRS § 291–4(a)(1) (Supp.1992) (Count III).

On May 14, 1992, Defendant filed a motion to suppress a syringe which was the basis for the charge in Count I and two packets of cocaine which were the bases for the charge in Count II. On July 15, 1992, the court orally denied the motion and filed its findings of fact, conclusions of law, and order on August 7, 1992.[1]

On July 15, 1992, Defendant proceeded to a jury trial on the indictment. At trial, the items sought to be suppressed were admitted in evidence by the court over Defendant's objection. The jury found Defendant guilty of the drug-related offenses, Counts I and II, and acquitted him of Count III, the DUI charge. Defendant was sentenced to a term of five years' imprisonment on each conviction, the sentences to run concurrently.

On appeal, Defendant apparently does not dispute the conviction on Count I.[2] We, therefore, affirm the conviction on Count I. Defendant contends, however, that the court erred in denying his motion to suppress with respect to Count II. We disagree and affirm the judgment of conviction on Count II.

## I.

At the hearing on Defendant's motion to suppress, the parties stipulated to the following facts. On November 17, 1991, at around midnight, the arresting police officer (the officer) saw Defendant's vehicle weaving on the road with the left headlight and taillight out. The officer stopped the vehicle. Defendant exited the vehicle and the officer noticed that Defendant had "watery, bloodshot eyes" and "ordered [him] to perform the DUI field test." In the officer's opinion, Defendant failed the test and he was arrested for DUI.

Defendant kept his hands in his jacket pockets to avoid being handcuffed or searched. After a struggle, the officer removed Defendant's hands from the jacket pockets and handcuffed his hands behind his back. The officer patted Defendant's left front jacket pocket and felt an object that he thought might be a pocket knife. The officer reached into Defendant's pocket and removed the object. It was wrapped in a paper towel or napkin.[3] He thereafter recovered the object, a syringe, and two packets of white powder from the paper towel.

The court's findings relating to the officer's testimony at the hearing and at the trial with respect to the recovery of the packets are disputed and are discussed herein.

The parties also stipulated at the hearing that "there was no search warrant and no consent to search[,] and following the struggle and seizure [Defendant] made some statements explaining the presence of the drugs and paraphernalia."

## II.

Defendant's contention is that certain of the court's findings of fact were clearly erroneous, resulting in incorrect conclusions of law.

■ On appeal, a court's findings of fact are reviewed under the clearly erroneous standard. *State v. Joyner*, 66 Haw. 543, 545, 669 P.2d 152, 153 (1983). " 'A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.' " *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (quoting *State v. Miller*, No. 16677, slip op. at 16, 1995 WL 8083, — Hawai'i

---

1. Defendant also moved to suppress statements made by him at the time the subject items were seized as fruits of the seizure. The court and the parties agreed that the admissibility of the statements would depend upon the court's ruling on the motion. However, the court did not mention the statements in its findings of fact or conclusions of law.

   At trial, Defendant related the statements he made after the seizure. Because Defendant does

not raise the admission of the statements as error on appeal and because he took the stand and related the statements on direct examination, the legality of admitting the statements at trial is not an issue on appeal.

2. Defendant's statement of points on appeal all relate to the packets.

3. *See* note 5, *infra*.

——, ——, — P.2d ——, —— (Haw.App. Jan. 9, 1995), *reconsideration denied,* 77 Hawai'i 501, 889 P.2d 78, *cert. granted,* 78 Hawai'i 421, 895 P.2d 172 (1995)).

■ A court's conclusions of law are reviewed under the right/wrong standard. *State v. Miller,* 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983). "Under the right/ wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *Id. Accord State v. Meyer,* 78 Hawai'i 308, 311, 893 P.2d 159, 162 (1995).

Defendant's position is that that part of Finding of Fact No. 10 [4] which found that "the syringe and two packets of cocaine were partially wrapped in a paper towel" [5] and that these items "were not, however, completely concealed within the paper towel" was clearly erroneous. He also maintains that that portion of Finding of Fact No. 12 [6] which found that the "discovery of the cocaine was inadvertent and incident to the recovery of the syringe, and any opening of the towel was incident to the recovery of the syringe" was also clearly erroneous.

In sum, Defendant's position is that contrary to the trial court's Findings of Fact Nos. 10 and 12, (1) the evidence showed the packets were completely concealed in the paper towel, and (2) the discovery of the packets was, therefore, not "inadvertent and incident to the recovery of the syringe[.]"

As a result, Defendant also maintains that the court wrongfully held, in Conclusion of Law No. 6,[7] that pursuant to *State v. Brighter,* 63 Haw. 95, 621 P.2d 374 (1980), the packets were legally seized because they were in plain view, and in Conclusion of Law No. 7,[8] that the instant case was distinguishable from *State v. Kaluna,* 55 Haw. 361, 520 P.2d 51 (1974), which prohibited searches of closed containers because here the "paper towel ... did not completely conceal ... the packets[.]"

Because the conclusions reached by the trial court logically stem from the challenged findings, the initial crucial issues are (1) whether there was evidence to support the findings that the two packets were "not ... completely concealed within the paper towel" and thus "[t]he discovery of the cocaine was inadvertent [because] ... [the] opening of the towel was incident to the recovery of the syringe[,]" and (2) even if such evidence exists, whether we, as a reviewing court, are left with the definite and firm conviction that a mistake was made.

■ In "deciding an appeal of the pretrial denial of the defendant's motion to suppress, the appellate court considers both the record of the hearing on the motion to suppress and the record of the trial." *State v. Kong,* 77 Hawai'i 264, 266, 883 P.2d 686, 688 (App. 1994).

4. Findings of Fact No. 10 states in its entirety: "When [the officer] removed the contents of the Defendant's left jacket pocket, the syringe and two packets of cocaine were partially wrapped in the paper towel. They were not, however, completely concealed within the paper towel."

5. Although the Findings of Fact refer to a paper towel, the officer testified alternatively that a paper towel or a paper napkin was involved.

6. Findings of Fact No. 12 states in its entirety:

12. Suspecting the syringe may have been drug paraphernalia, [the officer] decided to recover the syringe as evidence. While recovering the syringe from the paper towel, [the officer] also noticed the two packets of cocaine in the paper towel. The discovery of the cocaine was inadvertent and incident to the recovery of the syringe, and any opening of the towel was incident to the recovery of the syringe.

7. Conclusion of Law No. 6 in its entirety states:

6. During the recovery of the syringe, [the officer] observed the two packets of cocaine. The discovery of the cocaine was inadvertent and incident to the recovery of the syringe. Any opening of the paper towel was incident to the recovery of the syringe, and not a further search of the paper towel. The recovery of the two packets of cocaine fall within the plain view exception to the warrant requirement. *State v. Brighter,* 63 Haw. 95, 621 P.2d 374 (1980).

8. Conclusion of Law No. 7 in its entirety states:

7. The facts of this case are clearly distinguishable from *State v. Kaluna,* 55 Haw. 361, 520 P.2d 51 (1974). In the present case, the paper towel found in the Defendant's pocket did not completely conceal the syringe and packets of cocaine. To the contrary, [the officer] could see a portion of the syringe and recognized it as such.

All the evidence concerning the recovery of the packets was provided by the arresting officer. His relevant testimony at the motion to suppress hearing was the following:

Q. [(Deputy Prosecuting Attorney)] Okay. What was the purpose of your conducting a pat down?

A. [(The officer)] Just for weapons.

Q. When you eventually got his hand off the pocket, what did you do after that?

A. Then immediately went to that pocket and felt the outside of the pocket.

Q. Okay. From the outside of the pocket what did you feel?

A. Like a small, narrow, hard object.

Q. Okay. What did you think that object was?

A. I thought it was a pocket knife.

Q. Pardon me?

A. I thought it was a pocket knife.

Q. What did you do after that?

A. And I reached in the pocket to grab it out of the pocket.

Q. Did you take something out of the pocket?

. . . .

A. It was a paper towel.

Q. Okay. Can you describe the paper towel and whatever objects you recovered from the pocket.

A. The paper towel was like crumpled like after you wipe your mouth, crumpled up thrown in the rubbish can, crumpled up like that. And after I pulled the hand out of the pocket and I could see the portion of the syringe. Could see the numbers, the gauge numbers of the syringe.

Q. How were you able to identify it as a syringe?

A. I felt it in my hand and opened it up and then the thing just opened, just like a blooming flower. And you could see portions of the syringe in the napkin.

Q. Prior to your observation of the syringe did you physically open [indiscernible] like peel back portions of the paper or—

A. No, I didn't.

Q. When you saw the syringe, what did you think about the syringe?

A. I thought it was drug paraphernalia.

. . . .

Q. When you saw the syringe, what were you going to do with the syringe?

A. Submit it as evidence.

Q. Okay. What did you do after you saw the syringe?

A. I then opened the paper towel to recover the syringe.

Q. Did you recover the syringe?

A. Yes, I did.

Q. And when you recovered the syringe, what happened after that?

A. I went open the paper towel. I saw two small packets of white powder, also in the napkin.

Q. Did you recover those packets of—

A. Yes, I did.

Q. What did those packets appear to be to you?

A. Appeared to be cocaine.

The officer's relevant testimony at the trial was as follows:

A. [(The officer)] Inside the paper napkin was other items.

Q. [(Deputy Prosecuting Attorney)] What were those other items?

A. As I opened my hand I could see [sic] syringe, looked like a syringe. I could see the gauge and the numbers.

. . . .

A. I opened up the paper towel to seize it as evidence.

Q. Okay. To seize the syringe?

A. Yes.

Q. And what else did you find in the paper towel with the syringe?

A. Two small clear packets containing white powder.

. . . .

CROSS-EXAMINATION:

. . . .

Q. [(Deputy Public Defender)] You said during this arrest, you searched and found in the left pocket a towel? A paper napkin?

A. [ (The officer) ]   Yes.

Q.   Was it a paper napkin or a paper towel?

A.   Napkin, paper napkin.

Q.   Napkin.  All right.  And the napkin was wrapped or crumbled [sic]?

A.   Crumpled.

Q.   And inside the napkin that was partially closed.

A.   Yes.

Q.   And you could see the markings of a syringe?

A.   Yes.

Q.   You couldn't see any packets—white—of white powder?

A.   No, I couldn't.

Q.   But, you opened the napkin further and you found the—the packets?

A.   Yes.

### III.

■   We do not find the court's Finding of Fact No. 10, to the effect that the two packets of cocaine were "not . . . completely concealed[,]" clearly erroneous.  It is evident that the napkin was not folded to conceal its contents.  According to the undisputed testimony of the officer, the napkin was "crumpled up[.]"  When he held it, it "opened . . . like a blooming flower[,]" thus indicating that the napkin moved toward a horizontal plane.

■   Nor do we find that the court's Finding of Fact No. 12, to the effect that the discovery of the two packets was "incident to the recovery of the syringe[,]" clearly erroneous.  Considering the nature of the napkin as described by the police officer, we think it reasonable for the court to infer, that in recovering the syringe the packets would come into the view of the police officer.  While the officer's testimony might have been more precise, it must be viewed as a whole.  Viewed as a whole we cannot say that Finding of Fact No. 12 was clearly inconsistent with the officer's testimony.  The testimony supporting the State's position was not inharmonious with the court's finding.  After the officer testified he "opened up the paper towel to seize [the syringe]," he indicated he found two packets when asked "what else did [he] find in the paper towel with the syringe[?]"  This statement comports with the finding that the officer found the packets when he removed the syringe.  That he opened the napkin "further" after he could see the markings on the syringe could also support the inference that the napkin was opened "further" to recover the syringe.

Ultimately, we are not left with a definite and firm conviction that the trial court made a mistake.

### IV.

■   Having determined that the trial court was not clearly erroneous in finding that the two packets were discovered "incident to the recovery of the syringe[,]" the question remaining is whether the officer was authorized to open the napkin in order to recover the syringe.  When a closed container is removed from a defendant's control for officer safety, the officer may not search the closed container absent exigent circumstances.  *State v. Barrett,* 67 Haw. 650, 701 P.2d 1277 (1985).  A napkin or a paper towel can be a container for the purpose of applying constitutional search and seizure precepts.  *See Kaluna,* 55 Haw. at 368 n. 5, 520 P.2d at 58 n. 5 (1974) ("there is no meaningful distinction based on the fourth amendment" between a folded piece of tissue and a cigarette package).  However, the recovery of an object in "plain view" is not a search.  *Meyer,* 78 Hawai'i at 312, 893 P.2d at 163 (Haw.1995).  The "plain view" doctrine is distinguishable from the "open view" doctrine.  *State v. Kaaheena,* 59 Haw. 23, 28, 575 P.2d 462, 466 (1978).  "In the 'plain view' situation, 'the view takes place *after* an intrusion into activities or areas as to which there is a reasonable expectation of privacy.' "  *Id.* (quoting *State v. Stachler,* 58 Haw. 412, 417, 570 P.2d 1323, 1327 (1977)) (emphasis in original).  "In the 'open view' situation, however, the observation takes place from a non-intrusive vantage point" to what is knowingly exposed to the public.  *Id.* 59 Haw. at 28–29, 575 P.2d at 467.  In this case, the syringe was in "plain view" as opposed to "open view" because the officer did not observe the syringe from "a public vantage point."  *Meyer,* 78 Hawai'i at 313, 893 P.2d at 164.  In

other words, "no member of the public could reasonably have been in the position of [the officer] when he observed" the syringe. *Id.* at 315, 893 P.2d at 166.

 An object in "plain view" may be seized if there was: "(1) prior justification for the intrusion; (2) inadvertent discovery; and (3) probable cause to believe the item is evidence of a crime or contraband." *Id.* at 314, 893 P.2d at 165. The officer here removed the paper napkin containing the syringe from Defendant's pocket because he thought "it was a pocket knife." The seizure of the napkin being incident to a search for weapons following an arrest, the officer undoubtedly had justification for removing what he believed to be a pocket knife from Defendant's pocket.[9] *See State v. Barnes,* 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977) (an officer may conduct a warrantless search for weapons incident to an arrest).

 The trial court held, in Finding of Fact No. 10, that "[w]hen [the officer] removed the contents of [Defendant's] left jacket pocket, the syringe ... [was] partially wrapped in the paper towel ... [and] not, however, completely concealed within the paper towel." This finding is supported by the officer's testimony that when he removed the napkin from the pocket he could feel the syringe, and he could see the numbers on the syringe's gauge. Thus, the discovery of the syringe was inadvertent, and upon seeing the syringe, the officer had probable cause to believe the item was contraband, in this case, drug paraphernalia. "[O]nce the intrusion is justified, there is no requirement of exigency to seize evidence in plain view." *Meyer,* 78 Hawai'i at 316, 893 P.2d at 167. Accordingly, the officer here could seize the syringe even in the absence of exigent circumstances. Because, as found by the trial court, the packets came into view during the authorized seizure of the syringe, the packets themselves also became subject to seizure, as contraband coming within the "plain view" doctrine. As such, the packets were properly seized as evidence against Defendant. Therefore, we conclude that the trial court properly denied Defendant's motion to suppress the packets.

## V.

We affirm the Order filed August 7, 1992 denying Defendant's Motion to Suppress filed May 14, 1992, and the Judgment filed December 11, 1992 with respect to Counts I and II.

9. The seizure of the syringe is not challenged on appeal, and we cannot say the facts do not support the conclusion that a syringe might reasonably be mistaken for a pocket knife.