377 P.3d 65

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Benjamin M. QUIDAY, Defendant–Appellant.**

No. CAAP–13–0004085.

Intermediate Court of Appeals of Hawai'i.

June 21, 2016.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Stephen K. Tsushima, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

FOLEY, Presiding, J. and REIFURTH, J. with FUJISE, J., dissenting and concurring separately.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Benjamin M. Quiday (**Quiday**) appeals from the "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Suppress Evidence" entered on August 19, 2013 in the Circuit Court of the First Circuit [1] (**circuit court**).

On appeal, Quiday contends the circuit court erred in denying his motion to suppress evidence and by not allowing him to present evidence on his motion to suppress evidence.

## I.  BACKGROUND

On October 9, 2012, Officer Joseph Hanawahine (**Officer Hanawahine**) was "assigned a narcotic complaint number 12443, which related that there were pakalolo [2] plants

---

1.  The Honorable Colette Y. Garibaldi presided.

2.  In Hawaiian, "Pakalōlō" means marijuana. *See* Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* at 304 (2d ed. 1986).

being grown at 94–325 Kahualena Street" in Waipahu, Hawai'i (**Waipahu Residence**).

On October 22, 2012, by helicopter, Officer Hanawahine conducted an aerial reconnaissance of the Waipahu Residence from an estimated height of 420 feet. Officer Hanawahine attested that he observed between twenty to twenty-five plants "with the color and structure resembling that of marijuana plants" in two rows on the Ewa [3] side of the residence.

Later on October 22, 2012, Officer Hanawahine conducted ground reconnaissance of the Waipahu Residence. He attested that the residence was the same residence that he had observed from the helicopter but that he was unable to see the plants from Kahualena Street. Officer Hanawahine checked with the State of Hawai'i Narcotics Enforcement Division (**NED**) to determine whether the Waipahu Residence was an authorized location to cultivate medical marijuana or if anyone associated with the address was a medicinal marijuana permit holder.

On October 23, 2012, Officer Hanawahine again conducted an aerial reconnaissance of the Waipahu Residence at a height approximately 420 feet above ground and made the same observations as he did the previous day. Also on October 23, 2012, NED informed Officer Hanawahine that the Waipahu Residence was not listed as an authorized location to cultivate medicinal marijuana nor were any of the names associated with that address registered as current medicinal marijuana patients with valid medicinal marijuana permits.

3. "Ewa" is a Hawaiian word used as a directional term, referring to the direction of a place located to the west of Honolulu. *See* Pukui & Elbert, *Hawaiian Dictionary* at 42.

4. The Honorable Dean E. Ochiai presided over the State's application for a search warrant.

5. HRS § 712–1249.5(1)(a) provides:

§ **712–1249.5 Commercial promotion of marijuana in the second degree.** (1) A person commits the offense of commercial promotion of marijuana in the second degree if the person knowingly: (a) Possesses marijuana having an aggregate weight of two pounds or more[.] (Format altered.)

Officer Hanawahine conducted a third aerial reconnaissance of the Waipahu Residence before the end of October.

On October 26, 2012, the District Court of the First Circuit [4] approved a search warrant, S.W. 2012–261, for the Waipahu Residence in order to search for marijuana plants, related paraphernalia, and other evidence of narcotics transactions.

On October 28, 2012, Sergeant Gregory Obara (**Sergeant Obara**) conducted a ground reconnaissance of the Waipahu Residence and observed a man in the front Ewa corner of the property appearing to be watering plants. Sergeant Obara saw the same man a short time later watering plants on the Ewa side of the residence. The plants were shielded from street view by gates, walls, and fences surrounding the property.

On October 29, 2012, the Honolulu Police Department (**HPD**) executed the search warrant and found Quiday in possession of marijuana with an aggregate weight of over three pounds, as well as other drug paraphernalia. Sergeant Obara identified Quiday as the man he saw watering plants the day before. HPD recovered twenty plants resembling marijuana plants from the area where Sergeant Obara observed Quiday watering plants.

On November 1, 2012, Plaintiff–Appellee State of Hawai'i (**State**) charged Quiday with the offenses of commercial promotion of marijuana in the second degree, in violation of Hawaii Revised Statutes (**HRS**) § 712–1249.5(1)(a) (2014 Repl.),[5] and unlawful use of drug paraphernalia, in violation of HRS § 329–43.5(a) (2010 Repl.).[6]

6. HRS § 329–43.5(a) provides:

§ **329–43.5 Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 760–660 and, if appropriate as provided as provided in section 706–641, fined pursuant to section 706–640.

On April 8, 2013, Quiday filed "[Quiday's] Motion to Suppress Evidence" (**Motion to Suppress Evidence**). Quiday sought to exclude "any and all evidence seized from his home, as a result of the execution of Search Warrant S.W. 2012–261" because: (1) "[t]he anonymous tip triggering the investigation was not reliable"; (2) "Officer Hanawahine's resulting illegal aerial search violated [Quiday's] reasonable expectation of privacy"; and (3) "Officer Hanawahine omitted from his affidavit in support of the search warrant relevant, significant findings relating to his own credibility."

On July 24, 2013, the circuit court heard argument on the Motion to Suppress Evidence and denied the motion on the record.

On August 19, 2013, the circuit court issued its "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Suppress Evidence."

On August 26, 2013, Quiday filed a motion for the circuit court's permission to file an interlocutory appeal. The circuit court granted Quiday's motion on September 6, 2013. Quiday filed his notice of appeal on October 17, 2013.

## II. STANDARD OF REVIEW

■ An appellate court reviews "'the determination of probable cause for the issuance of a search warrant' under the *de novo* standard of review." *State v. Detroy*, 102 Hawai'i 13, 18, 72 P.3d 485, 490 (2003) (quoting *State v. Navas*, 81 Hawai'i 113, 123, 913 P.2d 39, 49 (1996)).

## III. DISCUSSION

Quiday argues that the circuit court erroneously denied his Motion to Suppress Evidence because the search warrant lacked probable cause. The Motion to Suppress Evidence challenged the finding of probable cause on three grounds, which Quiday reasserts on appeal: (1) the anonymous tip triggering investigation was not reliable; (2) the aerial search violated Quiday's reasonable expectation of privacy; and (3) Officer Hanawahine omitted from his affidavit significant prior findings relating to his credibility.

■ "The right of the people to be free from unreasonable searches and seizures is firmly embedded in both the Fourth Amendment to the United States Constitution and article 1, section 7 of the Hawai'i Constitution." *Detroy*, 102 Hawai'i at 21–22, 72 P.3d at 493–94.

■ "[A] search warrant may not issue except upon a finding of probable cause supported by oath or affirmation." *Id.* at 18, 72 P.3d at 490 (quoting *State v. Decano*, 60 Haw. 205, 209, 588 P.2d 909, 913 (1978)). "Probable cause exists when facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed." *Detroy*, 102 Hawai'i at 18, 72 P.3d at 490 (quoting *Navas*, 81 Hawai'i at 116, 913 P.2d at 42).

### A. Anonymous Tip

Quiday argues that the anonymous tip on which Officer Hanawahine acted was insufficient to support the issuance of a search warrant because Officer Hanawahine's affidavit in support of the State's request for a search warrant did not contain (1) the underlying circumstances from which the informant concluded narcotics were where the informant claimed they were or (2) the underlying circumstances from which Officer Hanawahine concluded the informant was credible and the informant's information was reliable.

■ "[W]hen hearsay, such as an anonymous tip, is used to establish probable cause, this court applies the two prong test announced in *Aguilar v. Texas*, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723] (1964), and expounded upon in *Spinelli v. United States*, 393 U.S. 410 [89 S.Ct. 584, 21 L.Ed.2d 637] (1969)." *Detroy*, 102 Hawai'i at 18, 72 P.3d at 490.

Under this test, the affidavit must contain some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need

not be disclosed, was "credible" or his information "reliable."

*Id.* (block format altered) (emphasis and ellipsis omitted) (quoting *State v. Davenport*, 55 Haw. 90, 93, 516 P.2d 65, 68 (1973)). "If the tip alone is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered." *Id.* at 19, 72 P.3d at 491 (citation, internal quotation marks, and brackets omitted).

The State concedes the anonymous tip alone could not form the basis of a search warrant, but must be corroborated by other information contained in the report. We therefore turn to whether Officer Hanawahine's observations corroborating the information in the anonymous tip are sufficient to establish probable cause.

## B. Reasonable Expectation of Privacy in Aerial Surveillance

Quiday challenges Officer Hanawahine's aerial reconnaissance observations on the basis that they were warrantless searches unsupported by probable cause because Quiday had a reasonable expectation of privacy in his property.

### i. The Fourth Amendment of the United States Constitution

The United States Constitution's Fourth Amendment provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. " 'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " *Kyllo v. United States*, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (citing *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)). Where the government intrudes on an individual's private affairs, it becomes a "search and seizure" within the meaning of the Fourth Amendment. *Katz v.*

*United States*, 389 U.S. 347, 351–53, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

In *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), the United States Supreme Court analyzed "whether naked-eye observation of the [defendant's] curtilage by police from an aircraft lawfully operating at an altitude of 1,000 feet violates an expectation of privacy that is reasonable."[7] The Supreme Court held that the defendant could not reasonably have expected that his garden was protected from public or official inspection from the air. *Id.* at 211–214, 106 S.Ct. 1809. According to the *Ciraolo* court, public airways are similar to public highways and "the mere fact that an individual has taken measures to restrict some views of his activities" does not "preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible." *Id.* at 213, 106 S.Ct. 1809.

In *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989) (plurality opinion), the United States Supreme Court examined whether helicopter surveillance from an altitude of 400 feet, which revealed marijuana growing in the defendant's partially covered greenhouse, constituted a search requiring a warrant. A plurality of the court concluded that the surveillance was not a "search" for Fourth Amendment purposes, noting specifically that there is no lower limit of the navigable airspace allowed to helicopters and that flight by helicopters in public airways is routine. *Id.* at 450–511, 109 S.Ct. 693 (noting, however, "We would have a different case if flying at that altitude had been contrary to law or regulation."). "Any member of the public could legally have been flying over [defendant's] property in a helicopter at the altitude of 400 feet and could have observed [defendant's] greenhouse." *Id.* at 451, 109 S.Ct. 693. The plurality noted that although the defendant had shielded his marijuana from view at ground level, because the roof was left partially open, the marijuana growing inside was could be viewed from an

---

7. "At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life[.]' " *Oliver v. United States*, 466 U.S.

170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (citing *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886)).

aerial vantage point. *Id.* Thus, the defendant could not reasonably have expected the partially hidden contraband to be immune from being viewed from the air. *Id.*

The United States Supreme Court has twice held that aerial surveillance of private homes and surrounding areas does not constitute a search where the area is not covered from aerial view. *Kyllo*, 533 U.S. at 33, 121 S.Ct. 2038 (citing *Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809; *Riley*, 488 U.S. 445, 109 S.Ct. 693). We conclude that under federal law, Officer Hanawahine's aerial observation of Quiday's property was not a "search" within the meaning of the Fourth Amendment. However, Hawai'i courts "are free to give broader privacy protection than that given by the federal constitution." *Detroy*, 102 Hawai'i at 22, 72 P.3d at 494 (quoting *State v. Mallan*, 86 Hawai'i 440, 448, 950 P.2d 178, 186 (1998)).[8] As such, we turn to whether Officer Hanawahine's aerial observation was a "search" within the meaning of article I, section 7 of the Hawai'i Constitution.

### ii. Article I, section 7 of the Hawai'i Constitution

Hawai'i's most significant cases examining the propriety of aerial surveillance are instructive, but they do not squarely address the dispositive issue in this case. We note that these cases relied primarily on the interpretation of whether an individual has a rea-sonable expectation of privacy under federal law, and not explicitly under article I, section 7 of the Hawai'i Constitution. In *State v. Stachler*, 58 Haw. 412, 570 P.2d 1323 (1977), the Hawai'i Supreme Court held that a defendant did not have a reasonable expectation of privacy from aerial observation of his marijuana patch, and therefore the helicopter surveillance was not a search "in the constitutional sense." *Id.* at 420, 570 P.2d at 1328–29. The supreme court based its conclusion on findings from the lower court: (1) under "state law and Civil Aeronautics Board regulations, the police helicopter was flying at a lawful and reasonable height"; (2) there had been no "continued aerial harassment or prolonged aerial surveillance" of the defendant's property over hours or days; (3) law enforcement had not employed "highly sophisticated viewing devices"; and (4) that there were occasional helicopter flights by the National Guard, crop dusters, and light aircrafts, including tour, pleasure and business craft, that flew over the area each day. *Id.* at 418–19, 570 P.2d at 1327–28 (footnote omitted). The supreme court held that the helicopter surveillance of the marijuana patch fell into the "open view" doctrine under federal law. *Id.* at 420, 570 P.2d at 1328–29.

In *State v. Knight*, 63 Haw. 90, 621 P.2d 370 (1980), the Hawai'i Supreme Court held that the defendant's premises and appurte-

---

8. [I]t is well-established that as long as we afford defendants the minimum protection required by the federal constitution, we are free to provide broader protection under our state constitution. *[State v. Quino*, 74 Haw. 161, 170, 840 P.2d 358, 362 (1992)] (citing *State v. Texeira*, 50 Haw. 138, 142 n. 2, 433 P.2d 593, 597 n. 2 (1967)); *see also State v. Bowe*, 77 Hawai'i 51, 57, 881 P.2d 538, 544 (1994) (emphasizing that " '[w]hen the United States Supreme Court's interpretation of a provision present in both the United States and Hawai'i Constitutions does not adequately preserve the rights and interests sought to be protected, we will not hesitate to recognize the appropriate protection as a matter of state constitutional law.' ").

In the area of searches and seizures under article I, section 7, we have often exercised this freedom. *See, e.g., Quino*, 74 Haw. at 170, 840 P.2d at 362 (declining to adopt the definition of seizure employed by the United States Supreme Court and, instead, choosing to afford greater protection to the citizens of Hawai'i); *State v. Kim*, 68 Haw. 286, 289–90, 711 P.2d 1291, 1293–94 (1985) (declining to adopt the federal standard and requiring police officers to have a "reasonable basis of specific articulable facts to believe a crime has been committed" before ordering a driver to get out of the car after a traffic stop); *State v. Tanaka*, 67 Haw. 658, 661–62, 701 P.2d 1274, 1276 (1985) (holding on independent state grounds that there is a reasonable expectation of privacy in trash bags and thus warrantless seizure of them violates article I, section 7, absent exigent circumstances); *State v. Fields*, 67 Haw. 268, 282, 686 P.2d 1379, 1390 (1984) (providing broader protection on the state level for probationers subject to warrantless searches); *State v. Kaluna*, 55 Haw. 361, 367–69, 520 P.2d 51, 57–58 (1974) (providing broader protection under article I, section 7, in the area of warrantless searches incident to a valid custodial arrest than is provided on the federal level).

*State v. Lopez*, 78 Hawai'i 433, 445, 896 P.2d 889, 901 (1995).

nances were in "open view" when police observed a marijuana patch growing in an open field and, therefore, defendant had no reasonable expectation of privacy from aerial reconnaissance. *Id.* at 93, 621 P.2d at 373. However, the police used binoculars in order to view the contents of defendant's greenhouse, which was covered by a shade cloth. *Id.* The supreme court noted that the defendant's "premises were located in a remote area, surrounded by vegetation and forest [and t]he greenhouse was covered by materials so that the naked eye was unable to observe what was therein." *Id.* at 93, 621 P.2d at 373–74. This evidence, the supreme court concluded, "exhibited [the defendant's] reasonable expectation of privacy," and therefore, the use of binoculars "as a visual aid to the naked eye" violated the defendant's expectation of privacy.[9] *Id.* The supreme court suppressed the seized evidence as fruits of the poisonous tree. *Id.* at 93, 621 P.2d at 374.

▮▮▮ We test the constitutionality of warrantless aerial surveillance under article I, section 7 of the Hawai'i Constitution with consideration of the relevant factors discussed in *Stachler* and *Knight,* and of the recognized purposes of the exclusionary rule.[10] The factors discussed in *Stachler* and *Knight* are: (1) compliance with state and federal flight regulations; (2) the targeted and prolonged nature of the aerial surveillance; (3) the use of highly sophisticated viewing devices; (4) the frequency of other vehicles over the area; and (5) the remote nature of and the vegetation surrounding the observed property. *See Knight,* 63 Haw. at

93, 621 P.2d at 373–74; *Stachler,* 58 Haw. at 418–20, 570 P.2d at 1327–29. These factors are balanced with principles underlying the exclusionary rule: (1) to protect individual privacy; (2) to deter illegal police conduct; and (3) to preserve the integrity of the judiciary. *See State v. Torres,* 125 Hawai'i 382, 394, 262 P.3d 1006, 1018 (2011).

▮▮▮ Here, there is no evidence that Officer Hanawahine did not comply with state or federal flight regulations,[11] nor is there evidence that Officer Hanawahine used the aid of a sophisticated viewing device to view Quiday's marijuana plants. There is also no evidence regarding the frequency of other aircraft in that area.

There is, however, evidence that Officer Hanawahine's flights were targeted and prolonged because he made three targeted flights in fewer than four days, although the record is unclear as to the details of the third flight. Targeted aerial surveillance of a property is at odds with Hawai'i's constitutional protections of individual privacy. Officer Hanawahine claims in his affidavit that on October 22, 2012, he unambiguously identified "about twenty to twenty five (20–25) plants with the color and structure resembling that of marijuana plants" based upon his "training and experience" of at least ten years. The need for two more flights to confirm his observations is unclear.

Additionally, the marijuana plants were located in the curtilage of his home, and should be less susceptible to warrantless "open view" searches. *See People v. Cook,* 41 Cal.3d 373, 221 Cal.Rptr. 499, 710 P.2d 299, 303 (1985);[12] *but cf. Ciraolo,* 476 U.S. at

---

9. In *State v. Holbron,* 65 Haw. 152, 648 P.2d 194 (1982), the Hawai'i Supreme Court held that "where binoculars are used only to confirm unaided observations into an area where appellant has no reasonable expectation of privacy, the surveillance does not constitute an unlawful search." *Id.* at 154, 648 P.2d at 197.

10. The Hawai'i exclusionary rule departs from the federal exclusionary rule in that in addition to serving the purpose of deterring governmental officials from circumventing constitutional protections, the Hawai'i exclusionary rule serves the "equally valuable" purpose of protecting the privacy rights of Hawai'i citizens. *Lopez,* 78 Hawai'i at 446, 896 P.2d at 902.

11. Quiday argues that Officer Hanawahine violated 14 C.F.R § 91.119(b) because Officer Hanawahine flew below the 1000–foot floor. However, Quiday set forth no evidence showing that Officer Hanawahine did not comply with 14 C.F.R. § 91.119(b) or (d), or any other state or federal regulation.

12. California courts have made explicit the high privacy interest in the "curtilage" of a residence, defined as "that zone immediately surrounding the home where its private interior life can be expected to extend." *Cook,* 221 Cal.Rptr. 499, 710 P.2d at 303 (citing *People v. Edwards,* 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713, 716 n. 2 (1969)). The California Supreme Court has explained, "One's yard may unavoidably be ex-

213, 106 S.Ct. 1809 ("That the area is within the curtilage does not itself bar all police observation.").

At the hearing on Quiday's Motion to Suppress Evidence, the circuit court noted that the relevant cases in which Hawai'i appellate courts have considered the use of aerial surveillance of individual property are from 1980 or earlier. The circuit court stated, "This is 2013. Technology has changed, the world has changed, and that what might have been considered, there needs to be a definition of what sophisticated electronic surveillance might be, as the definition may have changed as the world has changed." In light of increasing technological advances, we remain steadfast in our view that the article I, section 7 of the Hawai'i Constitution protects individuals from intrusion of their right to privacy. *See Kyllo,* 533 U.S. at 33–34, 121 S.Ct. 2038 ("It would be foolish to contend that the degree of privacy secured to citizens by the Fourth Amendment has been entirely unaffected by the advance of technology."). The California Supreme Court observed the need for protection from governmental intrusion in light of technological advance, stating:

> The People imply that law enforcement officers are entitled to use a technological advance—mechanical flight—which has merely given the public at large a vantage point it does not previously enjoy. But the prevalence of air travel does not excuse us from the delicate balancing of societal and privacy interests which underlies constitutional protections against "unreasonable" searches and seizures. Striking that balance, we must conclude that an individual has a reasonable expectation of privacy from purposeful police surveillance of his back yard from the air. We can conceive of no societal or law enforcement interest strong enough to justify such unfettered intrusions on the sanctity of private residences.

*Cook,* 221 Cal.Rptr. 499, 710 P.2d at 305. We agree, and interpret article I, section 7 of the Hawai'i Constitution to protect an indi-

posed to casual glances from passing aircraft, but he may still reasonably assume that it will not be intently examined by government agents

vidual from targeted aerial surveillance of the individual's residence and its curtilage.

The circuit court erred in concluding that Quiday did not have a reasonable expectation of privacy in the area surrounding his house from aerial surveillance. The search warrant for the Waipahu Residence was based upon an illegal search by the police and the evidence seized pursuant to the warrant was "fruit of the poisonous tree." *See Knight,* 63 Haw. at 93, 621 P.2d at 374. Because we vacate and remand on these grounds, we need not address Quiday's remaining arguments on appeal.

## IV.  CONCLUSION

Therefore, the "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Suppress Evidence" entered on August 19, 2013 in the Circuit Court of the First Circuit is vacated and this case is remanded for proceedings consistent with this Opinion.

Amended dissenting and concurring opinion by FUJISE, J.

It is well settled that an area in which an individual has a reasonable expectation of privacy is protected by the fourth amendment of the United States Constitution and by article 1, § 7 of the Hawai'i Constitution and cannot be searched without a warrant. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Wong,* 68 Haw. 221, 708 P.2d 825 (1985); *State v. Stachler,* 58 Haw. 412, 570 P.2d 1323 (1977).

*State v. Biggar,* 68 Haw. 404, 407, 716 P.2d 493, 495 (1986). However, it is also

> well established that the protections of the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution extend only to circumstances in which an individual has a reasonable expectation of privacy[.]  ... In ascertaining whether an individual's expectation of privacy brings the governmental activity at issue into the scope of

who are flying over it for that specific purpose." *Id.* 221 Cal.Rptr. 499, 710 P.2d at 304.

constitutional protection, [the Hawai'i Supreme Court] utilizes the two-part test derived from *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring): First, [the person] must exhibit an actual, subjective expectation of privacy. Second, that expectation must be one that society would recognize as objectively reasonable. *State v. Hauge*, 103 Hawai'i 38, 50–51, 79 P.3d 131, 143–44 (2003) (formatting altered, some citations omitted, quotation marks omitted). Under the open view exception, "where an object or activity is open and visible to members of the public … it is obvious that no reasonable expectation of privacy can be asserted since the object or activity is in open view for any person to observe." *Stachler*, 58 Haw. at 416, 570 P.2d at 1326–27; *see also, State v. Cuntapay*, 104 Hawai'i 109, 117–18, 85 P.3d 634, 642–43 (2004) citing *Stachler*. "[T]he expectation-of-privacy test … must be measured in terms of all factors on a case-by-case basis." *State v. Knight*, 63 Haw. 90, 93, 621 P.2d 370, 373 (1980).

In *Knight*, the police observed the premises by helicopter approximately 400–500 feet above the ground but were unable to determine what was in the greenhouse because of the opaque roof. *Id.* at 91, 621 P.2d at 372. Later, police concluded the greenhouse contained marijuana after viewing it for about two hours from a neighboring property about 100 yards away, using 7 × 50 high-powered binoculars. *Id.* In reviewing this helicopter surveillance, the Hawai'i Supreme Court found "no offensive conduct by the police in their observation of appellant's premises and appurtenances; since they were in open view, they were not constitutionally protected." *Id.* at 93, 621 P.2d at 373. In reviewing the binocular surveillance, the supreme court held that the use of binoculars to view the contents of the greenhouse which were not visible to the naked eye was unconstitutional. *Id.*

In *Stachler*, police observed a patch of marijuana using binoculars via helicopter at about 300 feet in altitude in a sparsely popu-lated area not visible from the nearest public road while conducting general surveillance for criminal activity. *Stachler*, 58 Haw. at 413–14, 570 P.2d at 1325. In reviewing the conduct of the police under Article I sections 5 and 7 of the Hawai'i Constitution, the supreme court did not disturb the lower court's finding that the police helicopter was flying at a lawful and reasonable height but noted that

> if the lower court had found that the height of a helicopter was unreasonably low or violated applicable laws and regulations, or that there had been continued aerial harassment or prolonged aerial surveillance of the Stachler property stretching out over hours or days, or that highly sophisticated viewing devices had been employed,

it might have decided differently. *Id.* at 418–19, 570 P.2d at 1328. The supreme court also noted that if "helicopter flights were rare occurrences in the area, the objective reasonableness of defendant's expectation of privacy would be more credible," but that the lower court found there were regular flights over the area. *Id.* at 419, 570 P.2d at 1328.

Thus, in light of *Stachler* and *Knight*, I agree with the majority that relevant factors to consider for the expectation of privacy test include (1) compliance with state and federal flight regulations; (2) the prolonged nature of the aerial surveillance; (3) the use of highly sophisticated viewing devices; and (4) the frequency of other aircraft over the area. However, I disagree that the circuit court erred in concluding that Quiday did not, on the present record, have a reasonable expectation of privacy in the area surrounding his house from aerial surveillance and would instead remand the case for a full evidentiary hearing on the relevant factors. In my view, the record is insufficient to conclude Quiday carried his burden, *State v. Estabillio*, 121 Hawai'i 261, 269, 218 P.3d 749, 757 (2009), which consists only of ambiguous evidence regarding the prolonged nature of the surveillance.[1] As the majority notes, there is no

1. In his sealed affidavit attached as an exhibit to the felony information filed in this case, Officer

Joseph Hanawahine (Officer Hanawahine) stated that he "conducted reconnaissance" at the resi-

evidence that Officer Hanawahine did not comply with state or federal flight regulations, that he used a sophisticated viewing device, or the frequency of flights in the area.

I also disagree with the formulation of some of the factors employed by the majority. Unlike the "plain view" doctrine, the observation of evidence in open view need not be inadvertent. *Stachler*, 58 Haw. at 417, 570 P.2d at 1327 ("[I]n the 'open view' situation no search is involved and the requirement that the view be inadvertent is not applicable."). Thus, I do not believe whether the surveillance is "targeted" is relevant to evaluating an open view observation.

Nor do I agree that protections should turn on whether the premises observed is urban or rural. While the supreme court in *Knight* did consider the facts that Knight's "premises were located in a remote area, surrounded by vegetation and forest[,]" those facts were evaluated in the context of the ground surveillance using binoculars. Rather, the inquiry is whether the object or activity is left in open view for any person to observe.

In this case, the record indicates that Sergeant Gregory Obara was able to observe a man watering plants while conducting a ground reconnaissance. Officer Hanawahine's aerial observation was conducted from helicopter above 400 feet. However, the record lacks evidence regarding the nature of the premises and its surroundings, the location of the plants in relation to the curtilage of the house, and most importantly, the precautions taken to ensure privacy. The property was in a residential neighborhood, where the marijuana plants may have been easily viewable from the neighboring property. In a case-by-case analysis of whether Quiday had a reasonable expectation of privacy, these are, questions of fact which need to be determined through an evidentiary hearing by the circuit court. I would remand for further proceedings consistent with this opinion.

---

dence on three separate occasions during October 2012. However, in his affidavit in support of the warrant, he indicated he conducted aerial surveillance on October 22 and October 23 and ground surveillance on October 23. Neither the

Circuit Court in its ruling, nor Quiday in his motion to suppress, mention a third aerial observation and Quiday argues there were two helicopter flights. *See also*, State's Memorandum in Opposition at 2–4.