Electronically Filed
Supreme Court
SCWC-13-0004085
21-NOV-2017
09:59 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Petitioner/Plaintiff-Appellee,

vs.

BENJAMIN M. QUIDAY,
Respondent/Defendant-Appellant.

SCWC-13-0004085

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0004085; CR. NO. 12-1-1644)

NOVEMBER 21, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

## I. INTRODUCTION

The issue presented in this case is whether the use of three helicopter flyovers of Respondent/Defendant-Appellant Benjamin M. Quiday's (Quiday) residence, whereby a police officer observed two rows of potted marijuana plants growing in the curtilage of Quiday's house with the naked eye, was a "search"

within the meaning of article I, section 7 of the Hawaiʻi Constitution.  For the reasons stated below, we hold that aerial surveillance of the curtilage of a private residence conducted for the purposes of detecting criminal activity thereupon qualifies as a "search" in the constitutional sense.  As such, the aerial surveillance conducted by the police in this case constituted unconstitutional, warrantless searches.  Therefore, the evidence seized pursuant to the search warrant that was based upon the police officer's observations during the flyovers was the fruit of the poisonous tree, and Quiday's motion to suppress evidence should have been granted.

Accordingly, we affirm the Intermediate Court of Appeals' (ICA) July 20, 2016 judgment on appeal filed pursuant to its June 21, 2016 opinion, which vacated the Circuit Court of the First Circuit's (circuit court) August 19, 2013 findings of fact, conclusions of law, and order denying Quiday's motion to suppress evidence and remanded the case for further proceedings, but on different grounds.

## II.  BACKGROUND

On October 9, 2012, Officer Joseph Hanawahine (Officer Hanawahine) of the Honolulu Police Department (HPD) was "assigned a narcotic complaint, complaint number 12443, which related that

there were pakalolo[1] plants being grown at 94-325 Kahualena Street" in Waipahu, Hawaiʻi (Waipahu Residence).  After receiving the anonymous tip, Officer Hanawahine used Google Earth[2] to verify and confirm the location of the address.

On October 22, 2012, Officer Hanawahine conducted aerial reconnaissance of the Waipahu Residence by helicopter, flying at an estimated height of 420 feet.  Officer Hanawahine attested that "based on [his] training and experience, [he] observed about twenty to twenty five (20-25) plants with the color and structure resembling that of marijuana plants[.]"  The plants were placed in two rows of black pots located directly along a wall on the west side of the residence.  The plants were not stored in a greenhouse or shed, nor were they covered by the eaves of the rooftop.  They also were not covered by any tarp or cloth.

Later on October 22, 2012, Officer Hanawahine conducted a medicinal marijuana check with the State of Hawaiʻi Narcotics Enforcement Division (NED) to determine if the Waipahu Residence was a location that was authorized to cultivate medicinal

---

[1]    In Hawaiian, "pakalolo" means marijuana.  See Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary at 304 (2d ed. 1986).

[2]    Google Earth is an online platform that allows users to view map and terrain data, imagery, business listings, traffic, reviews, and other related information by Google, its licensors, and users.  Google Maps/Google Earth Additional Terms of Service, Google, https://www.google.com/intl/en-US_US/help/terms_maps.html (last visited Oct. 13, 2017).

marijuana, or if anyone associated with the Waipahu Residence held a medicinal marijuana permit.

That same day, Officer Hanawahine also conducted ground reconnaissance of the Waipahu Residence. He attested that the residence he investigated on foot was the same residence that he had observed from the helicopter. Officer Hanawahine was unable to see any plants resembling marijuana from the street; the Waipahu Residence was surrounded by gates, walls, and fences, such that the backyard, where he had observed the marijuana plants while he was in helicopter, was not visible at ground-level.

On October 23, 2012, Officer Hanawahine conducted further aerial reconnaissance of the Waipahu Residence by flying approximately 420 feet above the ground in a helicopter. He again observed the same marijuana plants on the west side of the house and noted no changes from his observations from the previous day. On the same day, NED informed Officer Hanawahine that the Waipahu Residence was not an authorized location to cultivate medicinal marijuana, nor were any of the names associated with the Waipahu Residence registered medicinal marijuana patients with a valid medicinal marijuana permit.

Officer Hanawahine conducted a third round of aerial reconnaissance on October 23, 2012, again by flying approximately 420 feet above the ground in a helicopter. His observations were

4

identical to the ones he had made in his prior two aerial reconnaissance trips.

On October 26, 2012, the District Court of the First Circuit approved a search warrant, S.W. 2012-261, permitting a search of the Waipahu Residence for marijuana plants, related drug paraphernalia, and other evidence of narcotics transactions. The warrant was supported by Officer Hanawahine's affidavit, wherein he recounted his observations from his aerial and ground surveillance operations.

On October 28, 2012, Sergeant Gregory Obara (Sergeant Obara) conducted ground reconnaissance of the Waipahu Residence by driving around the premises in an unmarked vehicle. While traveling towards Koko Head on Kahualena Street, he observed a male who appeared to be watering plants on the front western corner of the property. A short time later, while traveling west on Kahualena Street, Sergeant Obara saw the same man appearing to spray water on plants located on the west side of the residence.

HPD executed the search warrant on October 29, 2012. During the search, HPD found Quiday in possession of marijuana and drug-related paraphernalia. HPD recovered twenty plants resembling marijuana plants from the area where Sergeant Obara had observed Quiday watering plants the day before. Sergeant Obara identified Quiday as the same person whom he had observed watering plants. Based on the evidence found during the search

5

of the Waipahu Residence, Quiday was arrested.

On November 1, 2012, Petitioner/Plaintiff-Appellee State of Hawai'i (the State) charged Quiday with one count of commercial promotion of marijuana in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 712-1249.5(1)(a),[3] and one count of unlawful use of drug paraphernalia, in violation of HRS § 329-43.5(a).[4]

## A. Circuit Court Proceedings

Quiday filed a motion to suppress evidence on April 8, 2013. He sought to "suppress any and all evidence seized from his home, as a result of the execution of Search Warrant S.W. 2012-261" because, inter alia, "Officer Hanawahine's resulting illegal aerial search violated Mr. Quiday's reasonable

---

[3]     HRS § 712-1249.5(1)(a) (1993) provides:

> (1) A person commits the offense of commercial promotion of marijuana in the second degree if the person knowingly:
>
>> (a) Possesses marijuana having an aggregate weight of two pounds or more[.]

[4]     HRS § 329-43.5(a) (2010) provides:

> It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706-660 and, if appropriate as provided in section 706-641, fined pursuant to section 706-640.

expectation of privacy[.]" The State filed a memorandum in opposition to Quiday's motion to suppress evidence on April 26, 2013, and filed a supplemental memorandum in opposition to Quiday's motion to suppress evidence on May 15, 2013.

At a hearing held on July 24, 2013, the circuit court[5] orally denied Quiday's motion to suppress evidence. The circuit court subsequently filed its written findings of fact, conclusions of law, and order denying Quiday's motion to suppress evidence on August 19, 2013.

Regarding whether Quiday's reasonable expectation of privacy had been violated due to the aerial surveillance, the circuit court found that while the "plants in Defendant's backyard were shielded from street view by gates, walls, and fences surrounding the residential property," Quiday's marijuana plants "were clearly visible from aerial observation. They were not stored in a greenhouse or shed, nor under the eaves of the rooftop, nor covered by any sort of tarp or shade cloth." Thus, the circuit court ruled that:

> Defendant has not expressed any subjective expectation of privacy from aerial observation in his backyard. The walls enclosing his backyard indicate Defendant's expectation of privacy from street level observers. However, the situation and location of the plants do not support such a claim as to view from the air. The view from overhead was unhindered by any sort of storage structure or visual obstruction.

---

[5] The Honorable Colette Y. Garibaldi presided.

7

Additionally, the circuit court found that:

> Defendant has not presented any evidence to support a claim that society is prepared to recognize an expectation of privacy from aerial observation as to the fully exposed contents in a walled backyard. On the contrary, Hawaii courts have expressly accepted the use of helicopters flown at reasonable heights in police investigations.

On August 26, 2013, Quiday sought permission from the circuit court to file an interlocutory appeal, which was granted on September 6, 2013.

## B. ICA Proceedings

One of the primary[6] issues on appeal was whether Officer Hanawahine's aerial surveillance constituted unconstitutional searches that violated Quiday's rights under the Fourth Amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution. Quiday argued that he had a reasonable expectation of privacy from aerial observation of his backyard, such that Officer Hanawahine's

---

[6] On appeal, the parties also discussed whether the anonymous tip that Officer Hanawahine had acted upon was sufficient to support the issuance of the search warrant. On this point, the State conceded that the anonymous tip could not have established probable cause on its own. The parties also discussed whether Officer Hanawahine had omitted material information that he was legally obligated to include in his affidavit. However, the ICA did not reach or rule on this issue because the ICA vacated the circuit court's findings of fact, conclusions of law, and order denying Quiday's motion to suppress based on its holding that the aerial surveillance violated his rights under the Hawaiʻi Constitution. See State v. Quiday, 138 Hawaiʻi 124, 127-31, 377 P.3d 65, 68-72 (App. 2016). Because the State did not present any questions as to these issues in its application for writ of certiorari, and Quiday did not file a response to raise the issues, we do not consider or address these matters. See Hawaiʻi Rules of Appellate Procedure Rule 40.1(d)(1) (2011) (providing that an application for a writ of certiorari must contain "a short and concise statement of the questions presented for decision, set forth in the most general terms possible" and that "[q]uestions not presented in accordance with this paragraph will be disregarded").

8

flyovers in the helicopter were unconstitutional, warrantless searches. He emphasized that the marijuana plants were shielded from view at ground-level by fences and walls, that there was no evidence to support that HPD had a legal right to fly over the Waipahu Residence, and that there was no evidence to support that overflight by helicopters or other aircraft was a common occurrence in the area within which the Waipahu Residence was located.

The State countered that Quiday did not have a reasonable expectation of privacy in his backyard from aerial observation. The State highlighted that the marijuana plants were not concealed from aerial view by any type of tarp or other structural cover, that HPD did not violate any Federal Aviation Administration Regulations in conducting the flights, that the flights were neither prolonged nor harassing, and that Quiday did not proffer any evidence to support his contention that aerial flyovers were so uncommon as to create a reasonable expectation of privacy from aerial observation.

On June 21, 2016, the ICA issued an opinion vacating the circuit court's findings of fact, conclusions of law, and order denying Quiday's motion to suppress evidence. State v. Quiday, 138 Hawaiʻi 124, 131, 377 P.3d 65, 72 (App. 2016). The ICA first held that Quiday's rights had not been violated under the federal Constitution. Id. at 128-29, 377 P.3d at 69-70.

9

Referring to the United States Supreme Court's decisions in California v. Ciraolo, 476 U.S. 207 (1986), and Florida v. Riley, 488 U.S. 445 (1989), the ICA noted that "[t]he United States Supreme Court has twice held that aerial surveillance of private homes and surrounding areas does not constitute a search where the area is not covered from aerial view." Id. at 129, 377 P.3d at 70. Thus, the ICA concluded that "under federal law, Officer Hanawahine's aerial observation of Quiday's property was not a 'search' within the meaning of the Fourth Amendment." Id.

The ICA then considered whether Officer Hanawahine's aerial observation was a "search" within the meaning of article I, section 7 of the Hawaiʻi Constitution, noting that "Hawaiʻi courts 'are free to give broader privacy protection than that given by the federal constitution.'" Id. (quoting State v. Detroy, 102 Hawaiʻi 13, 22, 72 P.3d 485, 494 (2003)).

The ICA acknowledged that this court has addressed the constitutionality of aerial surveillance in two cases: State v. Stachler, 58 Haw. 412, 570 P.2d 1323 (1977), and State v. Knight, 63 Haw. 90, 621 P.2d 370 (1980). Id. at 129-130, 377 P.3d at 70-71. Based on its reading of Stachler and Knight, the ICA held that the following five factors must be considered in evaluating the constitutionality of aerial surveillance practices under the Hawaiʻi Constitution: "(1) compliance with

10

state and federal flight regulations; (2) the targeted and prolonged nature of the aerial surveillance; (3) the use of highly sophisticated viewing devices; (4) the frequency of other vehicles over the area; and (5) the remote nature of and the vegetation surrounding the observed property." Id. at 130, 377 P.3d at 71. The ICA held that these five factors were to be "balanced with principles underlying the exclusionary rule: (1) to protect individual privacy; (2) to deter illegal police conduct; and (3) to preserve the integrity of the judiciary." Id.

Applying these factors, the ICA determined that the record lacked evidence tending to support that Officer Hanawahine did not comply with applicable flight regulations, and that the record did not indicate that Officer Hanawahine used sophisticated viewing equipment to observe the marijuana plants in Quiday's backyard. Id. The ICA also observed that there was no evidence regarding the frequency of aircraft in the area where the Waipahu Residence was located. Id.

However, the ICA determined that "Officer Hanawahine's flights were targeted and prolonged because he made three targeted flights in fewer than four days" and that "[t]argeted aerial surveillance of a property is at odds with Hawaiʻi's constitutional protections of individual privacy." Id. The ICA further noted that "the marijuana plants were located in the

11

curtilage of [Quiday's] home, and should be less susceptible to warrantless 'open view' searches." Id. Drawing upon the California Supreme Court's opinion in People v. Cook, 710 P.2d 299 (Cal. 1985), the ICA held that "article I, section 7 of the Hawaiʻi Constitution . . . protect[s] an individual from targeted aerial surveillance of the individual's residence and its curtilage." Id. at 131, 377 P.3d at 72. Accordingly, the ICA concluded that "[t]he circuit court erred in concluding that Quiday did not have a reasonable expectation of privacy in the area surrounding his house from aerial surveillance." Id.

**C. Application for Writ of Certiorari**

The State filed an application for writ of certiorari on September 16, 2016. In its application, the State presented two questions for review:

> Did the ICA majority gravely err: (1) in vacating the circuit court's August 19, 2013 "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Suppress Evidence," and (2) in interpreting article I, section 7 of the Hawaiʻi Constitution to protect an individual from targeted aerial surveillance of the individual's residence and its curtilage?

Quiday did not respond. This court accepted the State's application on October 31, 2016.

**III. STANDARDS OF REVIEW**

**A. Constitutional Questions**

"We answer questions of constitutional law by

12

exercising our own independent constitutional judgment based on the facts of the case.  Thus, we review questions of constitutional law under the right/wrong standard."  State v. Pratt, 127 Hawaiʻi 206, 212, 277 P.3d 300, 306 (2012) (quoting State v. Hanapi, 89 Hawaiʻi 177, 182, 970 P.2d 485, 490 (1998)).

**B.  Pretrial Findings of Fact and Conclusions of Law**

Pretrial findings of fact are reviewed under the clearly erroneous standard.  State v. Locquiao, 100 Hawaiʻi 195, 203, 58 P.3d 1242, 1250 (2002).  "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made."  State v. Eleneki, 92 Hawaiʻi 562, 564, 993 P.2d 1191, 1193 (2000) (quoting State v. Wilson, 92 Hawaiʻi 45, 48, 987 P.2d 268, 271 (1999)).  Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."  State v. Richie, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998) (citing State v. Eastman, 81 Hawaiʻi 131, 135, 913 P.2d 57, 61 (1996)).

Pretrial conclusions of law are reviewed de novo.  Locquiao, 100 Hawaiʻi at 203, 58 P.3d at 1250.  "A conclusion of

law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." Dan v. State, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994) (citing Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 119, 839 P.2d 10, 29 (1992)).

### IV. DISCUSSION

At issue on certiorari is whether the three helicopter flyover reconnaissance missions, whereby Officer Hanawahine flew over the Waipahu Residence at a height of approximately 420 feet to observe the marijuana plants growing in its curtilage with the naked eye, constituted unconstitutional, warrantless searches, which violated Quiday's rights under article I, section 7 of the Hawaiʻi Constitution. We agree with the ICA, albeit on different grounds, that the aerial surveillance conducted in the present case were unconstitutional searches that violated Quiday's reasonable expectation of privacy.

Article I, section 7 of the Hawaiʻi Constitution protects the right of the people to be free from "unreasonable searches, seizures and invasions of privacy." Haw. Const. art. I, § 7. The basic purpose of article I, section 7 "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." State v. Wallace, 80 Hawaiʻi 382, 392, 910 P.2d 695, 705 (1996) (quoting State v.

14

Bonnell, 75 Haw. 124, 136, 856 P.2d 1265, 1272 (1993)). If an action taken by the government intrudes on an individual's reasonable expectation of privacy, such an intrusion is a "search" in a constitutional sense, and must be supported by a warrant, or an applicable exception to the warrant requirement, and probable cause in order to be constitutional. Bonnell, 75 Haw. at 137, 856 P.2d at 1273 ("It is well settled that an area in which an individual has a reasonable expectation of privacy is protected by article I, section 7 of the Hawaii Constitution and cannot be searched without a warrant.").

We have previously recognized that "[c]urtilage is usually defined as a small piece of land, not necessarily enclosed, around a dwelling house and generally includes buildings used for domestic purposes in the conduct of family affairs." State v. Kender, 60 Haw. 301, 304, 588 P.2d 447, 449 (1978). "[O]ne's back yard may be part of one's curtilage[.]" Id. An individual's curtilage is protected by article I, section 7 of the Hawaiʻi Constitution when he or she has a reasonable expectation of privacy therein. See id., 588 P.2d at 499-50.

This court has adopted the two-part test that Justice Harlan articulated in his concurring opinion in Katz v. United States, 389 U.S. 347 (1967), to determine whether an individual

15

has a reasonable expectation of privacy. Bonnell, 75 Haw. at 139, 856 P.2d at 1273-74. Under this test: "First, one must exhibit an actual, subjective expectation of privacy. Second, that expectation must be one that society would recognize as objectively reasonable." Id., 856 P.2d at 1274 (quoting State v. Biggar, 68 Haw. 404, 407, 716 P.2d 493, 495 (1986)). We now apply this test to the facts before us.

## A. Quiday exhibited a subjective expectation of privacy.

We believe that Quiday exhibited an actual, subjective expectation of privacy in his backyard where the marijuana plants were located. Quiday's placement of the plants in his backyard, the activities in which were not capable of observation by members of the public at ground-level, was "indicative of [his] subjective intent to avoid the public gaze" into the curtilage of his home. State v. Kaaheena, 59 Haw. 23, 29, 575 P.2d 462, 467 (1978) (holding that the defendants' drawn curtains and closed venetian blinds were indicative of their subjective expectation of privacy); see also Biggar, 68 Haw. at 407, 716 P.2d at 495 (determining that the defendant exhibited a subjective expectation of privacy by closing the door to a toilet stall, and the fact that the door did not close completely did not eliminate this expectation). That Quiday did not cover the marijuana plants with a tarp or other structure to

16

preclude their visibility from above does not alter the fact that Quiday exhibited a subjective intent to keep the marijuana plants out of view from the public eye, and therefore, evinced a subjective expectation of privacy. State v. Davis, 360 P.3d 1161, 1180 (N.M. 2015) (Chavez, J., concurring) (reasoning that "an individual's subjective expectation of privacy from ground-level surveillance is coextensive with his or her subjective expectation of privacy from aerial surveillance" because "[i]f an individual has taken steps to ward off inspection from the ground, the individual has also manifested an expectation that the visibility of his or her property that he or she sought to block off from the ground should also be private when seen from the air," due to the fact that "members of the general public generally do not intently scrutinize other peoples' curtilages, even when they do fly over private property").

Having concluded that the first part of the two-part test has been met in this case, we now analyze whether Quiday's expectation of privacy was objectively reasonable.

**B. Quiday's expectation of privacy was objectively reasonable.**

The ICA held that the circuit court erred in ruling that Quiday did not have a reasonable expectation of privacy in the area where the marijuana plants were located because, on balance, the five factors discussed in Stachler and Knight

17

supported that Quiday's expectation of privacy was reasonable. Quiday, 138 Hawaiʻi at 130-31, 377 P.3d at 71-72. The ICA went a step further, and utilized the public policy considerations discussed in the California Supreme Court's decision in Cook to establish a rule whereby targeted aerial surveillance of a person's residence and curtilage is, per se, a "search" under article I, section 7 of the Hawaiʻi Constitution. Id.

We disagree with the ICA in two respects. First, although the ICA aptly observed that this court has previously considered the constitutionality of aerial surveillance practices twice before in Stachler and Knight, the facts of these cases are significantly distinguishable from those in the present case. Therefore, Stachler and Knight are not controlling here.

In Stachler, the police conducted general surveillance for criminal activity via a helicopter flying approximately 300 feet above the ground. 58 Haw. at 413-14, 570 P.2d at 1325. As the police helicopter flew over the defendant's property, one of the officers, using binoculars, observed a patch of marijuana about nine feet by twelve feet containing three rows, each with approximately four plants that were about eight to ten feet tall. Id. There was no determination that the patch, located roughly fifteen feet south of the defendant's house, was within

18

the curtilage of the defendant's home.  Id. at 414, 570 P.2d at 1325.  The defendant's land was in a sparsely populated, relatively remote agricultural area, surrounded by abandoned farms and wild trees.  Id. at 413, 570 P.2d at 1325.  The defendant's property could not be seen from the nearest public road, nor from the neighboring property.  Id.  To get to the defendant's house, one had to pass through a locked gate and travel up an unimproved road.  Id.

In Knight, police were conducting general helicopter surveillance in search of marijuana plants.  63 Haw. at 91, 621 P.2d at 372.  Flying at an altitude of approximately 400-500 feet, the police observed a greenhouse about sixty feet by ninety feet in dimension approximately forty-five feet away from the defendants' home.  Id.  The greenhouse was not shown to be within the curtilage of the defendants' residence.  See id.  The top of the greenhouse was covered by an opaque plastic roof, and the sides were wrapped with 80% shade cloth of black fiber glass material.  Id.  While the police could not discern what was inside the greenhouse due to the opaque roof, they still photographed the greenhouse's exterior during their aerial surveillance.  Id.

In short, the premises that the police observed from an aerial vantage point in Stachler and Knight were not shown to

19

be located in the curtilage of either of the defendants' homes. Stachler, 58 Haw. at 414, 570 P.2d at 1325, Knight, 63 Haw. at 91, 621 P.2d at 372. Additionally, the defendants in Stachler and Knight did not shield the observed premises from the public eye; neither the marijuana patch nor the greenhouse were concealed from view by any type of fencing or other barrier. See Stachler, 58 Haw. at 413-14, 570 P.2d at 1325, Knight, 63 Haw. at 91, 621 P.2d at 372.

By contrast, in this case, the marijuana plants that Officer Hanawahine observed via helicopter were tucked in the curtilage of Quiday's home; the plants were lined up in two rows, directly along the west side of the Waipahu Residence. Accordingly, Stachler and Knight are inapposite insofar as this court, in both cases, did not render any decision with regard to whether the observed locations were within the curtilage, and concluded that the defendants did not have a reasonable expectation of privacy in the observed areas based upon other facts. See Stachler, 58 Haw. at 418-20, 570 P.2d at 1327-28; Knight, 63 Haw. at 93, 621 P.2d at 373.

Second, we disagree with the ICA to the extent that it interpreted Stachler and Knight to create a five-factor balancing framework for analyzing the constitutionality of aerial surveillance practices. This court has established that

20

whether an individual has an expectation of privacy that is objectively reasonable is subject to a case by case analysis, based on the totality of the circumstances in each case. Kender, 60 Haw. at 304, 588 P.2d at 449-50 (agreeing with the California Supreme Court that whether an individual has a reasonable expectation of privacy in a certain place will depend upon "[a] number of factors" that will "arise on a case by case basis"); State v. Ward, 62 Haw. 509, 515, 617 P.2d 571-72 (1980) (holding that the reasonable expectation of privacy test requires courts to consider "all factors on a case-by-case basis").

Rather than creating a new analytical framework, the Stachler and Knight courts applied the foregoing totality-of-the-circumstances analysis in determining that the helicopter flyovers therein were not "searches" in the constitutional sense. In Stachler, this court held that the defendant did not have a reasonable expectation of privacy in his marijuana patch based on the following facts: (1) the police helicopter was flying at a lawful and reasonable height based on state law and Civil Aeronautics Board regulations; (2) there was no aerial harassment or prolonged aerial surveillance stretching out over hours or days; (3) no highly sophisticated viewing devices had been employed; (4) the defendant did not demonstrate that

21

helicopter flights were rare occurrences in the area; and (5) the defendant's expectation of privacy in his marijuana plants was "inconsistent with the 'common habits of persons engaged in agriculture.'"  58 Haw. at 418-20, 570 P.2d at 1327-28.

The Knight court, faced with facts comparable to those in Stachler, similarly held that naked-eye observations of the defendants' greenhouse did not constitute a search.  Knight, 63 Haw. at 93, 621 P.2d at 373.  Though this court's analysis in Knight concerning the constitutionality of the police's aerial surveillance was sparse, it appears that this court relied upon similar factors that the Stachler court utilized to the extent that both cases presented the same issue in the context of analogous fact patterns.  See id.

When the two cases are examined collectively, it appears that this court held that the defendants in Stachler and Knight did not have a reasonable expectation of privacy in their marijuana patch and greenhouse, respectively, based on the totality of the circumstances presented in those cases.  This court did not, in either case, establish a rigid analytical framework which requires courts to consider a specific set of factors when evaluating the constitutionality of aerial surveillance practices.

Therefore, we disagree with the ICA with respect to

its interpretation of our decisions in <u>Stachler</u> and <u>Knight</u> and its application of these cases to the distinguishable facts in the present case. However, notwithstanding the foregoing differences in opinion, we agree with the ICA to the extent that we also believe that the California Supreme Court's opinion in <u>Cook</u> is applicable to the present case, inasmuch as <u>Cook</u> provides us with persuasive guidance as to how to resolve the crucial issue of first impression before us: whether Quiday had a reasonable expectation of privacy from aerial surveillance of the curtilage of his home, which was hidden from view at ground-level.

In <u>Cook</u>, police officers received an anonymous tip that the defendant was growing marijuana at his residence, which was located in a semi-rural area. 710 P.2d at 302. An officer went to the defendant's property, but was unable to verify the tip because a high wooden fence surrounded the defendant's property, and there was no other publicly-accessible location from which to make further observations. <u>Id.</u> Two days later, the officer, by plane, flew over the defendant's property at an altitude of about 1,600 feet. <u>Id.</u> During the fly-over, the officer observed and photographed what he believed to be marijuana plants growing in an enclosed area behind the defendant's house. <u>Id.</u>

The officer procured a search warrant based upon his observations and the photographs.  Id.  After conducting a search pursuant thereto, police found marijuana plants growing behind the defendant's house in an area that was surrounded on three sides by solid wood fence that was eight feet tall; the house itself provided a barrier on the fourth side.  Id.  The fence was covered on the top with wood beams and chicken wire.  Id.  A second six-foot high fence surrounded the entire house, including the enclosure where the marijuana plants were being grown.  Id.

The Cook defendant was charged with unlawfully cultivating marijuana.  Id.  He moved to suppress the evidence obtained during the search of his home, arguing that the search warrant was invalid because the warrant was obtained as a result of an unlawful search.  Id.  The trial court ruled that the fly-over did not constitute a search because the defendant did not have a reasonable expectation of privacy in his backyard.  Id.

On appeal, the government argued that the defendant did not have a reasonable expectation of privacy in his backyard because although the fence blocked his backyard from view at ground-level, "the yard was open to routine observation from any private, commercial, or government flight across the airspace above his property."  Id. at 304.  The government further

24

asserted that "the surveillance here was not unduly intrusive, since it took place from a height of some 1,600 feet." Id.

For several reasons, the California Supreme Court rejected the government's argument. Id. The Cook court first observed that "the fact that government officials or members of the civilian public might be expected, for one reason or another, to enter a place or see or hear the activities within, does not necessarily preclude reasonable claims of privacy from intensive spying by police officers looking for evidence of crime." Id. Accordingly, the Cook court reasoned that although "[o]ne's yard may unavoidably be exposed to casual glances from passing aircraft, . . . [a person] may still reasonably assume that it will not be intently examined by government agents who are flying over it for that specific purpose." Id.

The California Supreme Court further determined that the government's argument could not stand because "the Constitution does not provide that one is open to governmental inspection by any and all means he has failed to forestall." Id. at 305. To the Cook court, "[s]uch a rule would encourage the transformation of our open society into a garrison state," and would impose upon private citizens the "virtually impossible" task of "shielding private activities in presumptively private areas from all possible observation." Id.

Acknowledging that its primary goal was to engage in the "delicate balancing of societal and privacy interests which underlies constitutional protections against 'unreasonable' searches and seizures," the California Supreme Court held: "We must conclude that an individual has a reasonable expectation of privacy from purposeful police surveillance of his back yard from the air. We can conceive of no societal or law enforcement interest strong enough to justify such unfettered intrusions on the sanctity of private residences." Id. The court concluded that "the warrantless aerial scrutiny of defendant's yard, for the purpose of detecting criminal activity by the occupants of the property, was forbidden by article I, section 13 of the California Constitution." Id. at 307.

The facts in the present case are nearly identical to those in Cook. Here, as in Cook, Officer Hanawahine received an anonymous tip that marijuana plants were being grown at Quiday's residence. Subsequently, as was the case in Cook, Officer Hanawahine was unable to verify the tip at ground-level because Quiday's residence was surrounded by gates and fences, and conducted several aerial fly-overs to bypass the physical boundaries that concealed Quiday's backyard from ground-view, for the specific purpose of detecting criminal activity in Quiday's backyard. In support of its position that Quiday did

26

not have a reasonable expectation of privacy from aerial surveillance of his backyard, the State advances an argument nearly identical to the government's argument in Cook. Specifically, the State contends that the police did not run afoul of Quiday's constitutional rights because his backyard was in "open view," insofar as his backyard was not concealed from aerial observation by any physical coverings.

In our view, the State's argument is unpersuasive. We agree with the California Supreme Court in that we also believe that although Quiday's yard "may unavoidably be exposed to casual glances from passing aircraft," Quiday was still entitled to "reasonably assume" that his backyard would "not be intently examined by government agents who are flying over it for" the specific purpose of detecting criminal activity therein. Cook, 710 P.2d at 304. In other words, we agree that while a private citizen may tolerate casual glances by a passerby on a private, commercial, or government flight, this does not necessarily mean that an individual thereby foregoes his or her reasonable expectation of privacy from "intensive spying by police officers looking for evidence of crime" in the curtilage of his or her home--an area where the private domestic activities normally conducted within the sanctity of the home itself can be expected to extend. Id.

27

Accordingly, we hereby adopt the rule established by the California Supreme Court in Cook, and hold that an individual has a reasonable expectation of privacy from governmental aerial surveillance of his or her curtilage and residence, when such aerial surveillance is conducted with the purpose of detecting criminal activity therein. Such purposeful aerial surveillance of an individual's residence and curtilage qualifies as a "search" under article I, section 7 of the Hawaiʻi Constitution.

Therefore, when Officer Hanawahine conducted three aerial reconnaissance missions over two days, during which he flew over Quiday's home at a height of 420 feet in order to observe the marijuana plants growing in the curtilage of Quiday's home, Officer Hanawahine conducted unconstitutional, warrantless searches in contravention of Quiday's rights under article I, section 7 of the Hawaiʻi Constitution. As a result, the evidence obtained during the execution of the search warrant, which was based on Officer Hanawahine's observations during his aerial reconnaissance missions, was the fruit of the poisonous tree. Consequently, we agree with the ICA, though on different grounds, that the circuit court erred in denying Quiday's motion to suppress evidence.

### V.  CONCLUSION

For the foregoing reasons, we affirm the ICA's July 20, 2016 judgment on appeal filed pursuant to its June 21, 2016 opinion, which vacated the circuit court's August 19, 2013 findings of fact, conclusions of law, and order denying Quiday's motion to suppress evidence and remanded the case for further proceedings, but on different grounds.

Stephen K. Tsushima
for petitioner

Susan L. Arnett
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

